## Case No. 16,110.

### UNITED STATES v. QUINN.

[8 Blatchf. 48; 1 3 Am. Law T. Rep. U. S. Cts. 180; 12 Int. Rev. Rec. 151.]

Circuit Court, S. D. New York. Nov. 2, 1870.

ELECTIONS—VIOLATION OF REGISTRATION LAWS—INDICTMENT—CONSTITUTIONAL LAW.

1. The 20th section of the act of May 31, 1870 (16 Stat. 145), providing for the punishment of persons who illegally register, or attempt to register. at a registration of voters for an election for a representative in congress, and enacting that a registration made under the laws of a state shall be deemed to be a registration within such act, is not invalid, as being an infraction of the constitution of the United States.

2. Such section does not establish a test of the qualification of an elector, or affect such qualification, and is not repugnant to article 1, § 2, of the constitution, which prescribes the qualifications of electors of members of the house of representatives.

3. Authority to enact such section is derivable from article 1, § 4, subd. 1, of the constitution, which provides, that congress may, at any time, by law, make or alter regulations as to the time, place and manner of holding elections for representatives in congress, and from the last subdivision of article 1, § 8, which provides, that congress shall have the power to make all laws necessary or proper for carrying into execution powers thereinbefore given.

4. Article 1. § 5. subd. 1, of the constitution, which provides that each house of congress shall be the judge of the elections, returns and qualifications of its own members, commented on.

5. The offense created by such 20th section being a misdemeanor, it is sufficient, in an indictment, to describe it in the words of the statute. adapted to the particular circumstances involved in the offense charged.

6. The averments, in the indictment in this case, as to the existence and action of the board of inspectors of registry, upheld as sufficient, on demurrer, the court taking judicial notice of the statutes of New York in respect to such board, such statutes being referred to in the indictment.

7. No suggestion being made to the court that the defendant had any defense to the indictment, judgment absolute was rendered against him on the overruling of a demurrer to the indictment.

This was an indictment against the defendant [Terence Quinn], founded on the

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

20th section of the act of May 31, 1870 (16 Stat. 145). It contained thirteen counts. The first count alleged, "that, under and in pursuance of acts of the legislature of the state of New York, a board of inspectors of registry, theretofore, in pursuance of said laws, duly appointed, and at the times hereinafter stated, duly acting for the Fourteenth election district of the Sixteenth ward, of the city of New York, in the county of New York, in said state of New York, and in the district and circuit aforesaid, and duly organized, did, at the said election district, on the certain days for that purpose prescribed by the laws of the state of New York, commencing the eighteenth day of October, in the year of our Lord one thousand eight hundred and seventy, proceed to make a list of all persons qualified and entitled to vote in the said election district, and to enrol such applicants for registration as should be qualified voters in the said election district at a general election of officers by the people of the state of New York, to ensue in the said state of New York, on the eighth day of November, in the year of our Lord one thousand eight hundred and seventy, at which general election, among other officers, a representative in the congress of the said United States, for the Sixth congressional district of the state of New York, was to be elected, and at the said election district voted for; that Terence Quinn, late of the city and county of New York, in the district and circuit aforesaid, yeoman, heretofore, to wit, on the eighteenth day of October, in the year of our Lord one thousand eight hundred and seventy, at the Southern district of New York, and within the jurisdiction of this court, the said last mentioned day being one of the said prescribed days, appeared at the said election district of the Sixteenth ward of the city of New York, in the county and state of New York, and in the district and circuit aforesaid, before the said board of inspectors, then and there proceeding as aforesaid to make the list aforesaid, and to enrol as aforesaid, and did wilfully, and unlawfully, and knowingly apply to the said board to have his said name entered upon the list aforesaid of qualified voters aforesaid, and the said board of inspectors did thereupon, on the said Terence Quinn applying as aforesaid, then and there place his said name upon said list of qualified voters, he, the said Terence Quinn, not then and there being lawfully entitled to be registered therein, then and there, against the peace of the said United States, and their dignity, and against the form of the statute of the said United States, in such case made and provided." The second count alleged, "that, at the Fifteenth election district of the Sixteenth ward of the city of New York, in the county and state of New York, and in the district aforesaid, at a registration of voters in the said election district, for an election for a representative in the congress of the United States, which said registration was then and there made under the laws of the state of New York, and which said election was to be held on the eighth day of November, in the year of our Lord one thousand eight hundred and seventy, and at which said election a representative in congress for the Sixth congressional district of the state of New York was to be elected, and, at the said election district, the same being part of said congressional district, to be voted for, Terence Quinn, yeoman, late of the city and county of New York, in the district and circuit aforesaid, at the Southern district of New York, and within the jurisdiction of this court, did unlawfully, knowingly, and wilfully, fraudulently register, and cause his name to be entered upon the list of voters in the said district, as a voter residing in said election district, and entitled by law to vote therein for a representative in the congress of the United States, whereas the said Terence Quinn did not then and there reside in the said district, as he, the said Terence Quinn, well knew, and was not, by reason of said non-residence, a lawful voter in said district, or entitled to be registered as a voter, as he then and there well knew, then and there, against the peace of the said United States, and against their dignity, and against the form of the statute of the said United States in such case made and provided." The third and fourth counts were like the second, except as to the number of the election district. The fifth count alleged, "that heretofore, to wit, on the eighteenth day of October, in the year of our Lord one thousand eight hundred and seventy, at the city and county aforesaid, and in the Southern district aforesaid, a registration of voters for an election for representatives in the congress of the United States, and for a general election to be held on the eighth day of November, in the year of our Lord one thousand eight hundred and seventy, at which election a representative in congress was to be chosen, in and for the Sixth congressional district of said state, in which said congressional district the Sixteenth election district of the Sixteenth ward of said city and county was, and is, situated, and is a part, was held under and pursuant to the laws of the state of New York, in and for the said Sixteenth election district of the Sixteenth ward of said city and county of New York, for which registration of voters, proper officers had been and were appointed to receive the applications of persons lawfully entitled to vote at the said election district, and to register and make lists of the names of such persons, pursuant to the provisions of the laws of the state of New York, which said officers were then and there acting as a board for the purpose of receiving, registering, and entering upon such list the names of such persons, the said Terence Quinn, not being a resident of said election district, and not being lawfully entitled to be registered therein, and not being

a voter therein, with intent then and there to deceive, injure, and defraud the lawful electors of said district, and the good and lawful people of the said state of New York, did then and there wilfully, knowingly, and fraudulently appear before the said officers, being such board, and cause and procure his name to be entered and registered upon the list of voters of said election district, as one of the persons entitled to vote therein at the aforesaid election district, wherefore the jurors aforesaid, upon their oath aforesaid, say, that the said Terence Quinn did, at the time and place aforesaid, unlawfully and fraudulently register in the election district aforesaid, against the peace of the said United States and their dignity, and against the form of the statute of the said United States in such case made and provided." The sixth and seventh counts were like the fifth, except as to the number of the election district. The eighth count alleged, "that, under and in pursuance of acts of the legislature of the state of New York, a board of inspectors of registry, theretofore, in pursuance of said laws, duly appointed, and, at the time hereinafter specified, duly acting, for the Fifteenth election district of the Sixteenth ward, of the city of New York, in the county of New York, and in the district and circuit aforesaid, and duly organized, did, on certain days for that purpose prescribed by the laws of the state of New York, commencing the eighteenth day of October, in the year of our Lord one thousand eight hundred and seventy, proceed to make a list of all persons then qualified and entitled to vote in the said election district, and to enrol such applicants for registration as should be qualified voters in the said election district, at a general election of officers by the people of the state of New York, to ensue on the eighth day of November, in the year of our Lord one thousand eight hundred and seventy, at which general election, among other officers, a representative in the congress of the said United States for the Sixth congressional district of the said state of New York, was to be elected, and at the said election district voted for; that Terence Quinn, yeoman, late of the city and county of New York, in the district and circuit aforesaid, heretofore, to wit, on the eighteenth day of October, in the year of our Lord one thousand eight hundred and seventy, at the Southern district of New York, and within the jurisdiction of this court, he, the said Terence Quinn, not then and there residing at a house numbered one hundred and fifty-six, in West Nineteenth street of said city of New York, the day last aforesaid being one of the prescribed days of registration as aforesaid, appeared in his proper person before said board of inspectors, proceeding, as aforesaid, to make the list aforesaid, and to enrol as aforesaid, and did wilfully, knowingly, and unlawfully and falsely say and represent to said board that he then and there resided at said house, numbered one hundred and fifty-six, and in West Nineteenth street, of said city of New York, and did apply then and there unlawfully, knowingly, and wilfully, to said board proceeding as aforesaid, to place his name upon said list and enrolment as residing in said house, numbered one hundred and fifty-six, in West Nineteenth street, of the city of New York, and, upon such application, the said board did then and there place his name upon said list and enrollment, and thereunto placed said number one hundred and fifty-six, in West Nineteenth street, as the residence of said Terence Quinn, whereas, in truth, the said Terence Quinn did not reside at said house and number, as he well knew; and so the jurors aforesaid say, that the said Terence Quinn did, on the day and in the year aforesaid, and in manner and form aforesaid, and at an election as aforesaid, fraudulently register, then and there, against the peace of the said United States, and their dignity, and against the form of the statute of the said United States, in such case made and provided." The ninth and tenth counts were like the eighth, except as to the number of the election district. The eleventh count contained the same allegations as the eighth as to the board of inspectors of registry, and then averred that the defendant, "having been theretofore, to wit, on the twenty-sixth day of January, in the year of our Lord one thousand eight hundred and sixty-six, at the court of general sessions, in and for the city and county of New York, duly convicted of an infamous crime, to wit, the crime of an attempt at grand larceny, the same then being a felony by the laws of the state of New York, and the said Terence Quinn not then and there having been pardoned for said offense and conviction, or restored by pardon to the rights of a citizen, and then and there well knowing that, by reason of the premises, he was not a qualified voter at said election, or entitled to registration as a voter at said election, did then and there knowingly, and unlawfully, and wilfully apply to said board to place his name upon said list as a legal and qualified voter, and, upon such application, the said board did then and there place his name on said list as aforesaid, whereas, in truth and in fact, the said Terence Quinn was not a lawful voter, and was not entitled to be registered as aforesaid; and so the jurors aforesaid say, that the said Terence Quinn did, on the day and in the year aforesaid, and in manner and form aforesaid, and at an election as aforesaid, fraudulently register, then and there, against the peace of the said United States, and their dignity, and against the form of the statute of the said United States, in such case made and provided." The twelfth and thirteenth counts were like the eleventh, except as to the number of the election district. The defendant demurred to the indictment.

The 20th section of the act of May 31, 1870, was as follows: "If, at any registration

of voters, for an election for representative or delegate in the congress of the United States, any person shall knowingly personate and register, or attempt to register, in the name of any other person, whether living, dead or fictitious, or fraudulently register, or fraudulently attempt to register, not having a lawful right so to do; or do any unlawful act to secure registration for himself or any other person; or by force, threat, menace, intimidation, bribery, reward, or offer, or promise thereof, or other unlawful means, prevent or hinder any person having a lawful right to register, from duly exercising such right; or compel or induce, by any of such means, or other unlawful means, any officer of registration to admit to registration any person not legally entitled thereto, or interfere in any manner with any officer of registration in the discharge of his duties, or by any such means, or other unlawful means, induce any officer of registration to violate or refuse to comply with his duty, or any law regulating the same; or knowingly and wilfully receive the vote of any person not entitled to vote, or refuse to receive the vote of any person entitled to vote, or aid, counsel, procure, or advise any such voter, person or officer to do any act hereby made a crime, or to omit any act, the omission of which is hereby made a crime, every such person shall be deemed guilty of a crime, and shall be liable to punishment and prosecution therefor, as provided in section nineteen of this act for persons guilty of any of the crimes therein specified: provided, that every registration made under the laws of any state or territory, for any state or other election at which such representative or delegate in congress shall be chosen, shall be deemed to be a registration within the meaning of this act, notwithstanding the same shall also be made for the purposes of any state, territorial or municipal election." The punishment provided in section nineteen was, "by a fine not exceeding five hundred dollars, or by imprisonment for a term not exceeding three years, or both, in the discretion of the court," and the payment of "the costs of prosecution."

Edwin W. Stoughton and George T. Curtis, for defendant.

Noah Davis, U. S. Dist. Atty.

Before WOODRUFF, Circuit Judge, and BLATCHFORD, District Judge.

WOODRUFF, Circuit Judge (orally). The demurrer to the indictment now before the court, which was the subject of discussion at our yesterday's session, presents two questions. The first is, whether the law of the United States under which the indictment is found is constitutional, or, in a more general form, whether it is a valid enactment, it being assailed, however only upon the ground that it is an infraction of the constitution of the United States. The second

is, whether the indictment sufficiently charges an offense under the law. The court will not endeavor to discuss with great minuteness or particularity these two questions. The shortness of the interval which has elapsed since the argument closed has precluded the elaboration of an opinion upon the points which are raised.

Had the court entertained serious doubt of the correctness of the conclusions which they have reached, they would have taken time for greater deliberation, and, if it seemed to them fit, would have endeavored to throw light upon the subject by an extended discussion. But, entertaining no doubt, and deeming it unnecessary and unprofitable that the progress of the public business should be delayed for the purpose of indulging in an elaborate exposition of constitutional or other law, we feel not only at liberty, but constrained, to confine ourselves to a very brief statement of the leading grounds upon which the conclusions which we have reached must rest.

First, then, as to the constitutionality of the act in question. It is important, perhaps—certainly we deem it wise in approaching that subject—to state just what the question is which we are called to consider, and to what a narrow point of inquiry the questions involved in the present demurrer bring us. The section of the act of congress upon which this indictment is found is single. It is a single section of a single statute. Its validity involves the consideration of no other sections of the same or other statutes. Its discussion does not bring into view numerous questions which were alluded to in the progress of the argument, which might or might not be fit subjects for discussion, if other statutes or other sections of the present statute were before us for review.

Without reading the section under which this indictment is found at length, or attempting to speak of it in technical terms, it must suffice to say, that it is an act which makes a fraudulent registration, or a fraudulent attempt to register, by a person not having a legal right so to do, for the purposes of an election of a member of congress, a crime against the United States of America; and the validity and constitutionality which we are to consider, rests upon the single question—Has congress the power, under the constitution, to declare a fraudulent registration, or a fraudulent attempt to register, for the purpose of voting for a representative or delegate in congress, a crime against the United States? We therefore enter into no consideration of various topics which were alluded to, referring to other details of other laws, or of the act of which this section is a part.

There are four provisions of article 1 of the constitution of the United States, reference to which is pertinent to the inquiry before us, namely:

Section 2: "The house of representatives

shall be composed of members chosen every second year by the people of the several states, and the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislature."

Section 4, subdivision 1: "The times, places, and manner of holding elections for senators and representatives shall be prescribed in each state by the legislature thereof; but the congress may at any time, by law, make or alter such regulations, except as to the places of choosing senators."

Section 5, subdivision 1: "Each house shall be the judge of the elections, returns, and qualifications of its own members."

Section 8, last subdivision: "The congress shall have power to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this constitution in the government of the United States, or in any department or officer thereof."

Does the act in question infringe the provision of the constitution which I have read, which provides that the electors in each state shall have the qualifications requisite for electors of the most numerous branch of the state legislature? It is argued with great ingenuity and ability, that the act in question infringes that clause of the constitution, because it seeks to establish a test of qualification—seeks to affirm the evidence of qualification—and, by so doing, ex vi termini, imposes qualification itself. We apprehend that that argument rests upon no solid basis. The act in question neither professes, nor, by any implication, can it, we think, be construed to affect the qualification of any elector anywhere. It imposes no duty to register. It prohibits no registration that is required in the state in which the elector seeks to exercise his franchise. It touches no qualification of the elector in any other respect. It leaves the power of the state to prescribe the qualifications of electors for the most numerous branch of the state legislature, in the largest and fullest extent, untouched and unaffected. It says, and only says, that, when the qualification of registration is imposed by the state law, (leaving the expediency or wisdom of such a law entirely to the judgment of the state), it shall be an offense against the laws of the United States to contribute, by fraud and violation of the state registry laws, to the sending of a representative to the congress of the United States who is not clothed with the authority which a true expression of the popular will would give; and that is all.

But, it is said, that congress, having nothing to do with the question of qualification, cannot treat of the subject of qualification at all; and that, to require that the elector shall have the qualification which the state law imposes, and make his voting or registration an offense if he has not that qualification, is, on the part of congress, to impose a condition itself on the right to vote. The court do not feel called upon to say, however little doubt they may feel upon the subject, whether or not the congress of the United States might, if they saw fit, make it a condition, throughout these United States, that all who come to elect members of the house of representatives shall first register their names. We do not conceive that that question is involved; but, that the prescription of such a condition is no infringement of the elector's right to vote, we have no doubt, and we refer, with confidence and with satisfaction, to the constitution of the state of New York, as the exposition of the views of her people and her legislature, at least, upon that precise question. It is provided, in her constitution of 1846 (article 2, § 1), that "every male citizen of the age of twenty-one years who shall have been a citizen for ten days, and an inhabitant of the state one year next preceding an election, and for the last four months a resident of the county where he may offer his vote, shall be entitled to vote, at such election, in the election district of which he shall at the time be a resident, and not elsewhere, for all officers that now are or hereafter may be elective by the people"—a declaration of qualifications, and the sole qualifications, which, under the constitution of the state of New York, it is competent to prescribe. And the framers of this same constitution, not deeming this unqualified declaration of the qualification of voters to be infringed in any degree, have, in section 4 of the same article, provided, that laws shall be made for ascertaining, by proper proofs, the citizens who shall be entitled to the right of suffrage hereby established. Our reflections lead us, therefore, to the conclusion, and without hesitation, that the prescription of a mode of ascertaining and certifying the qualification of him who shall present himself to exercise the elector's privilege, is no infringement of the clause that declares what shall constitute the requisite qualification, and is no attempt to prescribe to the states—to this state or to any other state—any condition for the exercise of the right of suffrage, and no attempt to prescribe the qualifications of an elector. If we are right in this, then the second section of the first article of the constitution is no impediment to the legislation of congress upon this subject.

The next clause of the constitution to which we refer—section four, subdivision one—declares, that the times, places and manner of holding elections for senators and representatives shall be prescribed in each state by the legislature thereof, but the congress may at any time, by law, make or alter such regulations, except as to the place of choosing senators. Upon this affirmative provision of the constitution, and in support of the legislation which is now assailed, it is insisted, that this clause of the constitution warrants the passage of the

act in question, on the one hand, while, on the other, it is denied, first, that this section includes the authority claimed, and second, that the authority attempted to be exercised is within it.

The framers of the constitution of the United States placed its government, all its strength and vigor, and all its permanent capacity for usefulness to the people, for whom it was made, in the votes of the people themselves. The debates in the convention by which the constitution was framed, and the discussions which were had by way of exposition when the constitution was presented to the states for their acceptance, both of which were cited to us in the argument, show, in the fullest manner, that those framers of the constitution did not, for one moment, lose sight of the indispensable condition—on which alone a government of the people could be safe to the people themselves or could secure the beneficent ends for which it was instituted—that her popular vote should be the true expression of the opinions and choice of the electors. Hence, we say, this section four, subdivision one, of the first article of the constitution; and hence, as was ably and clearly exhibited in the argument of the learned counsel for this defendant, the framers of the constitution—either through an apprehension that, in some possible change of events, the states might become indifferent to the general good, and so neglect their duty, or warned, perhaps, by experience had, under the previous articles of confederation, on that subject, or with wisdom forecasting the possibility that, at some distant period, circumstances might arise in some state, in which obstacles would be interposed to the full and fair expression of the popular voice, and, so, conscious that the very preservation of the government itself, for all its useful ends, demanded that its perpetuation through a popular vote should be secured—by this first subdivision of the fourth section conferred power upon congress for that self-preservation. Time might some where be so arranged, and for some end other than the well-being of the whole nation, that the popular voice might be denied a full expression. Place might be so fixed as in that mode to defeat the general and the indispensable purpose. The manner of holding an election might be such as to operate to prevent an open, fair expression of the popular voice. Or—to use an illustration freely used in the discussions had when those men who went into the various states and elsewhere wrote in explanation of the provisions of the constitution, that the people might understand it—elections might be so conducted, either through an indifference of the states or otherwise, that the general government might find itself unsupported by the very people in whose will the foundations of the government rested. Hence, we say, the scheme pointed out by this first subdivision of section four, and

hence, we say, the explanations which were given by the great and good men who expounded it.

It seems to me that we ought to pause but a moment upon the suggestion, that, in the enforcement of a law such as we have now before us for consideration, intended to secure an election of members of the house of representatives by the giving of all legal votes and by the giving of none that are fraudulent, the government of the United States has no interest. "The government of the United States"—what is that? It may be conceded to be an artificial thing, which men call "the government," and which is sometimes looked upon as the source as well as the exhibition of power, and not capable of interest more than it is of thought or feeling. But, the government of the United States, in the true sense, is the people of the United States, one and all, throughout the length and breadth of the land. And the people of the United States, here and everywhere, have not only an interest, but an interest that is vital, in the preservation of their institutions and in the preservation of all that is pure, just and honest in the popular vote, on which, for their safety and security, their institutions and their government rest.

Now, it is conceded, if I have rightly apprehended the arguments that have been addressed to us, to be within the constitutional grant of power to congress, to proceed, under this power, to regulate the time, place and manner of holding elections, and to make such regulations as to each, that all the electors in every state shall have full and fair opportunity to declare their will. And the illustration chiefly used in the discussions to which I have referred, was an illustration drawn from the supposition, that, possibly, the intervention of congress to secure that end might become necessary. It is important that no one who is not an elector shall be permitted to defeat the will of those who are, by interposing his vote at such elections. It is equally important that no one shall be permitted to deposit more votes than he is entitled to. And both these possible evils rest precisely upon the principle on which it was declared that this clause might be useful, and the exercise of the power might become necessary, in order that all legal voters should have full and fair opportunity to deposit their votes. The court are not able to see the difference in principle between a regulation to enable all to vote who are entitled to vote, and a regulation to prevent men from voting who are not entitled, or to prevent men from voting more times or in more places than one. If not, then the power to do the one involves the power to prohibit the others. The power to make a regulation that shall secure to every man entitled to vote a safe and convenient exercise of his privilege, involves the power to

see to it that no one who is not entitled to vote shall be permitted to exercise that right. All this leaves, as I have already stated, the subject of the qualification of electors untouched—leaves the laws of the states—leaves the laws of the state of New York—to operate in their full force. Though it be true that the laws of the state of New York cannot be relied on as the source of authority, or as giving any vigor to the enactment, yet, if it be necessary to refer the power of congress to pass this enactment to a grant to be found in the constitution, wholly independent of state authority, then the court must say that it has it in the section before us. And, if it be true, that the existence of that power in congress is exclusive, so that, when exercised, it takes the place of existing state law and the imposition of state penalties, be it so. This involves no new principle. The court and the people of this country have long been familiar with the doctrine which is now conceded, and, indeed, insisted on here, that the legislation of congress on the subjects intrusted to it by the constitution is exclusive.

This brings within view another consideration connected with this subject—that, for eighty years, as is urged, congress has not seen fit to exercise the power which is conferred by the first subdivision of the fourth section. On that subject, two observations are pertinent. The first is, that failure to exercise the power hitherto is shown, by the history of this government, to furnish no argument against its existence. The debates to which I have referred, the discussions to which I have referred, all breathe the confidence the framers of the constitution had, not only in the patriotism, but in the intelligence and wisdom and fidelity, of the people of the states. In the congress of the United States, which was convened and has continued to be convened from that time onward, that same confidence that the people of the states would, on this subject, make all due and needful regulations, has been exhibited. If it be true that the time has come which the contemporaneous expositors of the constitution contemplated as possible and designed to anticipate and guard against, in which it would be expedient for congress to intervene and exercise the power, then that time has come, the anticipation of which furnished the occasion and the ground for introducing this clause into the constitution. Whether that time has come, in which just apprehension warrants legislation—whether occasion, therefore, exists, which makes it best and wisest that congress shall exercise the power, is a question with which a tribunal of justice has nothing to do. Of that, congress is the sole and proper judge.

The other observation having reference to this lapse of time which I propose to make is this—that there are numerous powers conferred by the constitution upon congress, which, for a time, remained dormant in their hands. There are powers which even now remain dormant in their hands; and the history of adjudication on this subject shows it to have been well established by decisions of the supreme court of the United States, that the circumstance that states have legislated, and legislated through periods of years, upon a subject, without question, and without interference by congress, in no degree impairs the force of the constitutional grant to the congress of the United States, and their neglect to exercise the power in no sort defeats the power itself. On the contrary, until the congress of the United States acts in the exercise of the power—until then, the states, in matters not directly inhibited, legislate, and their legislation has full force and validity. When the act of congress comes, then that act is exclusive. And again, therefore, I say, if it be true, if the argument be sound, that the power of the state of New York to punish cannot co-exist with the power of congress to impose punishment under the law which we have before us, then the exclusive legislation of congress must prevail; and it is reasoning reversely to assume or to argue that the two cannot co-exist, that the legislation of the state does exist, and that, therefore, the act of congress cannot stand. It is reversing the order of argument. The true statement is this: If the two cannot co-exist, the act of congress is controlling, and the state law gives way. Perhaps I have not done justice to the argument as it was presented; but these observations seem to me pertinent to one of the views which was presented to us in the discussion.

I have anticipated, in what I have said, the force and effect of the last subdivision of the eighth section of the first article—the power "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers." If, according to the view which we take of the section already considered, congress has power to regulate the time and manner of holding elections, so as to secure as well a full and fair opportunity to vote at all elections for members of congress, as also to see to it that no one fraudulently exercises the privilege of voting, then it follows, under such subdivision, that congress has the power to pass all laws which shall be necessary to give effect to those regulations; and we know of none so efficient as to add the sanction of a penalty.

There is another section upon which I desire to make a single observation—section five, subdivision one: "Each house shall be the judge of the elections, returns, and qualifications of its own members." We do not think it necessary to rest our views of the constitutionality of the law upon that section, and yet the argument, to our minds, is plausible in a high degree, if, indeed, we ought not to regard it as satisfactory alone considered, namely, that when the constitution confers

upon each house the power to judge of the elections, returns, and qualifications of its own members, and then authorizes congress to make all laws necessary and proper for carrying into execution the foregoing powers, and all other powers vested in any department of the government, it authorizes congress to make such laws touching the conduct of elections and returns, as will operate, first, to furnish to each house of congress appropriate evidence of the validity of the commission or appointment of any man who comes there claiming the right to a seat, and, second, to prohibit the intervention of any obstacle which might embarrass or prevent the exercise of the right of each house to judge of the election of any man who claims a right to a seat. It is familiar to us all, that, when a contest arises—I refer to this as the practical exposition of the subject—congress feels itself at liberty to probe the matter of the election of a representative to its very foundation, and to look through and beyond all forms of authentication and certificate, and inquire and determine the actual fact, whether or not he who claims a seat is entitled thereto; and our statute book contains numerous provisions having for their object the facilitating of the inquiry. Can it be, that when congress is clothed with full power to pass all laws to carry into effect this power conferred upon a department of the government, it may not make it an offence against the laws of the United States to effect a fraudulent registration, which is to stand as prima facie evidence that the vote which is cast is a legal and proper vote? I will not enlarge upon that branch of the subject, but there are considerations tending strongly to the inference, that the power contained in the last two clauses which I have named, is full and ample to sustain the constitutionality of the section on which this indictment is founded.

Our conclusion, then, is, that the section of the act in question upon which this indictment rests—the twentieth section—which assumes the power of congress to make it an offence against the laws of the United States to fraudulently register, is a constitutional enactment.

The next inquiry is, whether the indictment in question is a sufficient indictment under the act. That question involves no constitutional considerations. It involves no principles that are not generally applicable to an ordinary inquiry into the sufficiency of indictments. And, in reviewing this subject, and looking at the history of adjudications, particularly in the United States courts, but sustained by the courts of the states of New York and of Massachusetts, and others, we find ourselves in no doubt. This being a misdemeanor created and declared by statute, it is sufficient to describe the statutory offence in the words of the statute itself—in the words of the statute, adapted, of course, to the particular circumstances involved in the offence which is charged. This doctrine seems to us abundantly sustained by decisions. U. S. v. Bachelder [Case No. 14,490]; U. S. v. La Coste [Id. 15,548]; U. S. v. Pond [Id. 16,067]; U. S. v. O'Sullivan [Id. 15,974]; U. S. v. Wilson [Id. 16,730]; U. S. v. Mills, 7 Pet. [32 U. S.] 138; Campbell v. People, 8 Wend. 636. The case of U. S. v. Wilcox [Id. 16,692], has singular significance in reference to a branch of the discussion upon this point. In that case, a man was indicted for perjury under the statute, for taking a false oath before a commissioner, which indictment was held insufficient because the commissioner was described as "a commissioner of the United States"—a description of so general a character as not to import an authority to administer an oath. But, notwithstanding the indictment was held insufficient, the court took occasion to say, that, setting forth the commission, or the particular powers of the commissioner, or the source whence they were derived, is not necessary, provided he is alleged to hold an office which apparently confers upon him the authority to administer the oath in the particular case specified, and that, that being done, the general allegation that he had competent authority to administer the oath, is sufficient.

This indictment, in our view, follows the words of the statute. Its departures are not properly departures. They are adaptations of the charge to the particular facts alleged, and, within every view, they are in substantial conformity to the statute.

It is suggested by my associate, and very properly, that it becomes a necessary part of our judicial duty, in construing this indictment, and in applying the inquiry whether it is substantially in conformity with the statute, that we take judicial notice of the statutes of the state of New York, which are referred to in the indictment itself.

Upon both of the points, therefore, involved in the discussion, we are of the opinion that the indictment should be sustained, and that the demurrer of the defendant should be overruled.

No suggestion being made to the court that the defendant had any defence to the indictment, judgment absolute was rendered against him on the demurrer, and he was sentenced to two years' imprisonment in the Albany county penitentiary, and to pay the costs of prosecution.