## UNITED STATES v. HOWARD.

### (District Court, W. D. Tennessee. April 6, 1904.)

### Nos. 1847–1850.

1. INDICTMENT—STATEMENT OF OFFENSE—IMMATERIALITY OF FORM.

   Rev. St. § 1025 [U. S. Comp. St. 1901, p. 720], which provides that no indictment shall be deemed insufficient by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant, precludes the necessity that any one of the essential averments in an indictment shall be made in any particular form, no matter how that form may be sanctioned by precedent and long usage. If the averment appears in any form, or may by fair construction be found anywhere within the text of the indictment, it is sufficient.

2. PERJURY—INDICTMENT FOR SUBORNATION—OMISSION OF DATE.

   An indictment for subornation of perjury, under Rev. St. § 5393 [U. S. Comp. St. 1901, p. 3654], which charges that the offense was committed "on the ——— day of December, 1893," is defective, but, the date not being of the essence of the offense, the defect is one of form only, and is cured by Rev. St. § 1025 [U. S. Comp. St. 1901, p. 720], which provides that no indictment shall be deemed insufficient by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant.

3. SAME—DESCRIPTION OF OFFENSE—AVERMENT THAT WITNESS WAS SWORN.

   Under the settled rule that an indictment for subornation of perjury must contain all the averments necessary in one charging the crime of perjury against the witness suborned, such an indictment with respect to perjury committed in court must, by direct averment or equivalent words, show that the suborned witness was sworn to speak the truth, the whole truth, and nothing but the truth. It is not sufficient to charge that defendant procured the witness falsely upon oath to depose, etc., since such averment relates to the acts of defendant, and not of the witness; nor is

the defect cured by further expressions which assume, without stating, that the witness was sworn—such as that "when he was so sworn," or "when he so swore," he did not believe the things to which he testified to be true.

**4. INDICTMENT—REFERENCE TO CAPTION.**

The caption and commencement of an indictment may be looked to for the purpose of showing the court in which the indictment was found—that being the office of the caption—but not for the purpose of making more certain any of the essential averments in relation to the charging of the offense.

**5. PERJURY—INDICTMENT FOR SUBORNATION—DESIGNATION OF COURT.**

An indictment for subornation of perjury must designate the court in which the perjury occurred by specific averment or equivalent words. Where the caption and commencement show the court in which the indictment was found, further averments with reference to the proceedings in which the alleged perjury was committed, reciting them to have been in "said court," are not sufficient.

**6. SAME—OMISSION OF WORD "WILLFUL."**

The crime of perjury, as defined in Rev. St. § 5392 [U. S. Comp. St. 1901, p. 3653], consists in a witness willfully stating contrary to his oath any material matter which he does not believe to be true; and while, in an indictment for subornation of perjury, under section 5393 [U. S. Comp. St. 1901, p. 3654], the omission of the identical word "willful" in charging the false swearing by the witness may not be fatal, the indictment must in such case contain equivalent words, themselves free from ambiguity or equivocation. Such requirement is not met by an averment that the defendant knew at the time of the subornation that the testimony to be given by the witness was "false, willful, and contrary to the oath" to be taken by the witness, which relates to the knowledge of defendant, and not to the state of mind of the witness.

**7. SAME.**

Indictments for subornation of perjury, in procuring witnesses to testify falsely with respect to the identity of a defendant with persons conducting business under different names, construed, and *held* to sufficiently negative the truthfulness of the testimony given, although they did not affirmatively aver what the truth was.

**8. SAME.**

An indictment for subornation of perjury must show that the testimony of which the perjury is predicated was material, either by an averment in terms that it was material, or by stating facts showing its materiality.

Indictments for Subornation of Perjury. On Demurrers.

The following is one of the indictments found:

United States of America. Western District of Tennessee.

In the District Court of the United States within and for the Eastern Division of the said District.

In the Sixth Judicial Circuit of the United States.

October Term, 1893.

The grand jurors of the United States within and for the Eastern Division of the Western District of Tennessee, in said Sixth Judicial Circuit, duly elected, impaneled, sworn, and charged to inquire within and for the said division of the district aforesaid, in said circuit, upon their oaths present: On, to wit, the 27th day of October, 1893, an indictment was duly returned to the said court by the grand jury thereof against one G. F. B. Howard for the violation of the postal laws of the United States by placing and causing to be placed in the post office at Jackson, Tennessee, a certain letter in and

¶ 8. See Perjury, vol. 39, Cent. Dig. § 95.

for executing a scheme and device to defraud, set out in said indictment; the same being No. 1,727. That on the same day and year aforesaid another indictment for a similar offense (No. 1,728) was duly returned by the grand jury aforesaid against Joseph Leger, alias G. F. B. Howard, and that on the day and year aforesaid another indictment (No. 1,729) was returned by the grand jury against said G. F. B. Howard for a similar offense, and that on the day and year aforesaid another indictment for a similar offense (No. 1,730) was returned by the grand jury aforesaid against E. Ross, alias Wm. Lord Moore, alias Joseph Leger, alias G. F. B. Howard, and that on the day and year aforesaid another indictment (No. 1,731) was returned by the grand jury thereof, for a similar offense, against said G. F. B. Howard, and that on the day and year aforesaid another indictment (No. 1,732) was returned by the grand jury aforesaid for a similar offense against said G. F. B. Howard. That afterwards, to wit, the 30th day of October, 1893, another indictment (No. 1,758) was returned by the grand jury aforesaid, for a similar offense, against said G. F. B. Howard. That on the day and year last aforesaid another indictment (No. 1,759) was returned by the grand jury aforesaid, for a similar offense, against said G. F. B. Howard. That after said indictments were so returned by the grand jury, other proceedings being had thereon, said court, by order made and entered on the 3d day of November, 1893, ordered all of the said indictments consolidated, which was accordingly done, and that afterwards, on, to wit, 7th day of November, 1893, after other proceedings duly had, said defendant, G. F. B. Howard, alias, etc., was duly arraigned before the said court upon said indictments so consolidated, and, upon such arraignment, then and there for plea said he was not guilty in manner and form as in the consolidated indictments so alleged against him, and that afterwards, upon the defendant's plea of not guilty as aforesaid, on, to wit, at Jackson, Tennessee, on the ——— day of December, 1893, the said G. F. B. Howard upon the said trial did unlawfully procure one Edgar E. Smith, for and on behalf of himself, the said defendant in said causes, falsely upon oath as a witness for the said defendant to depose, say, and give in evidence before the court and a jury then and there duly impaneled and sworn to try the issues raised by the said plea that he, the said Edgar E. Smith, about the beginning of February, 1892, at No. 5 Ingersol Road, London, England, knew one Wm. Lord Moore, and then and there met the said Wm. Lord Moore, and that the said defendant, G. F. B. Howard, was not the same person at No. 5, Ingersol Road, London, England, as Wm. Lord Moore, and that about the middle of February, 1892, he, the said Edgar E. Smith, worked for the said Wm. Lord Moore at No. 5 Ingersol Road, London, England. Whereas, in truth and in fact, the said Edgar E. Smith then and there, in Jackson aforesaid, before the said court, upon a trial of said consolidated causes, did not believe he knew one Wm. Lord Moore about the beginning of February, 1892, at No. 5 Ingersol Road, London, England, and did not then and there believe that he the said Edgar E. Smith met the said Wm. Lord Moore ever at No. 5 Ingersol Road, London, England; and whereas, in truth and in fact, the said Edgar E. Smith did not, about the beginning of February, 1892, meet the said Wm. Lord Moore at No. 5 Ingersol Road, London, England; and whereas, in truth and in fact, the said Edgar E. Smith did not then and there, and never knew any Wm. Lord Moore at No. 5 Ingersol Road, London, England; and whereas, in truth and in fact, the said Edgar E. Smith did not work for the said Wm. Lord Moore in London, England, about the middle of February, 1892, and did not believe that he ever worked for the said Wm. Lord Moore, as he so swore on the said trial; and whereas, in truth and in fact, the said Edgar E. Smith did not believe at the said trial, when he so swore that the defendant on trial, G. F. B. Howard, aforesaid, was not the same person as Wm. Lord Moore; and whereas, in truth and in fact, the said Edgar E. Smith, at said Jackson, when he so swore as aforesaid, did not believe that he had any such knowledge, or that the said defendant, G. F. B. Howard, was not the same person at No. 5 Ingersol Road, London, England, as Wm. Lord Moore; and whereas, in truth and in fact, the said G. F. B. Howard, at the time when he did so then and there procure the said Edgar E. Smith to so falsely depose, say, and give in evidence upon his oath before the court and jury as aforesaid, then and

there well knew that the said Edgar E. Smith would not give his evidence aforesaid according to the truth, and well knew that the said evidence to be so given before the court and jury by the said Edgar E. Smith was false, willful, and contrary to the oath so to be taken by the said Edgar E. Smith, and contrary to the said Smith's belief. And so the grand jurors aforesaid, upon their oaths aforesaid, do find and say that the said G. F. B. Howard did then and there, on, to wit, ——— day of December, 1893, at Jackson, in manner and form aforesaid, unlawfully commit the crime of subornation of perjury, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States.

Julius A. Taylor,
United States District Attorney for the Western District of Tennessee.

Synopsis of Archbold's indictment for subornation of perjury:

(1) That a certain issue was joined between J. L. and J. W. in a certain suit and court.

(2) That before the trial of said issue one J. S. unlawfully did suborn one J. N. to appear as a witness at the trial for the defendant, and to give in evidence, etc., before the court and jury to be sworn, certain matters material and relevant to the issue, in substance and to the effect following: (Substance of testimony to be given is set out.)

(3) That afterwards the issue was tried by a jury, and J. N. appeared as a witness and was duly sworn, and took his corporal oath before T. L. D., chief justice; he, the said T. L. D., chief justice, having sufficient and competent authority to administer the said oath to said J. N.

(4) That on the trial of said issue it became a material question whether the said J. W. assaulted and beat, etc.

(5) And the said J. N., being sworn, falsely, corruptly, and willfully before said jurors did depose and swear, amongst other things, in substance and to the effect following: (Testimony given is here set out.)

(6) Whereas, in truth and in fact (perjury is here assigned).

(7) And whereas, in truth and in fact, the said J. S., at the time he suborned said J. N., well knew (pursuing the words in the assignment of perjury).

Synopsis of indictment in case No. 1,848:

(1) That the grand jury of "said court" returned an indictment against Howard.

(2) That defendant was duly arraigned before said court, and pleaded not guilty.

(3) That afterwards on the trial the defendant did unlawfully procure one Edgar E. Smith falsely upon oath as a witness for defendant to depose, say, and give in evidence before "the court and a jury" that in the month of, etc. (testimony is here set out).

(4) That the testimony so given being material testimony.

(5) That, in truth and in fact, the said Smith did not believe he knew, and did not know, Wm. Lord Moore, etc. (testimony is here falsified).

(6) That defendant, Howard, at the time he procured the said Smith to falsely depose, well knew the said Smith would not give his evidence according to the truth, and that the evidence was false, willful, and contrary to the oath so to be taken by the said Smith, and contrary to the said Smith's belief.

The conclusion in both Archbold's form and in the present indictment is omitted.

The three other indictments against Howard are similar to the one above digested.

Demurrer of the defendant:

The defendant, G. F. B. Howard, demurs to the indictment presented and filed herein because said indictment is not sufficient in law, and does not charge a crime, for the following reasons, which are assigned as grounds of the demurrer:

(1) It is nowhere alleged or shown in the indictment by what court, or before whom, Edgar E. Smith (the witness defendant is charged with unlawfully procuring to testify falsely) took the oath required of witnesses, and that the court or person administering the oath had authority to administer the same. Nor is it even alleged in the indictment that said witness was ever sworn by any one.

(2) It is not alleged or shown in the indictment that the testimony of Edgar E. Smith (the witness defendant is charged with unlawfully procuring to testify falsely) was given by him willfully and contrary to his oath.

(3) The indictment sets forth the testimony of Edgar E. Smith (the witness defendant is charged with unlawfully procuring to swear falsely), followed by allegations that such testimony is untrue, and that said witness at the time of his testimony did not believe such testimony to be true, but nowhere does the indictment set forth the truth of the facts in respect to which said witness is charged with false swearing.

(4) The testimony of Edgar E. Smith (the witness defendant is charged with unlawfully procuring to testify falsely), set forth in the indictment and alleged to be false, could not be material in the cases in which it was given, under the statement of the issues in those cases, as such issues are set forth and charged in this indictment.

(5) The indictment does not allege that the testimony of Edgar E. Smith (the witness defendant is charged with unlawfully procuring to testify falsely) was material, nor does it allege or set out facts from which its materiality appears as a matter of law, but, on the contrary, the indictment itself shows said testimony to be immaterial.

Therefore, for want of a sufficient indictment, and because no crime, under the law, is charged in this indictment, defendant prays judgment of the court whether he should answer further, and that he be discharged, etc.

[Signed]                                    L. T. M. Canada,
                                            Attorney for Defendant.

Additional grounds of demurrer:

The defendant, G. F. B. Howard, files the following as additional grounds of demurrer to the indictment presented and filed herein:

First. The day of the alleged commission of the offense is left blank in the indictment, the time alleged being "———— day of December, 1893," which is insufficient.

Second. The indictment does not show, allege, or designate the court or tribunal before which the alleged false testimony was given. It only alleges and shows that it was before the court and a jury at Jackson, Tennessee, which is insufficient.

Therefore, for want of a sufficient indictment, and because no crime under the law is charged in this indictment, defendant prays judgment of the court whether he should answer further, and that he be discharged, etc.

[Signed]                                    L. T. M. Canada,
                                            Attorney for Defendant.

L. T. M. Canada, for demurrant.
George Randolph, U. S. Atty.

HAMMOND, J. The defendant, George Frederick Burgoyne Howard, stands indicted for subornation of perjury by four separate indictments, which were found by the grand jury of this court February 23, 1894—more than 10 years ago. It is necessary to a proper understanding of this case to state that it appears by the records in this court of the cases referred to in these indictments for subornation of perjury, as being on trial at the time the alleged subornation took place, that Howard had been previously indicted, tried, and convicted in eight consolidated cases for a violation of the postal laws of the United States by using the mails in furtherance of a scheme to

defraud his victims by leading them into the delusion that they were the heirs at law or distributees of estates and personal property left in England or other European countries by ancestors of these victims now residing in America, and, having accomplished the delusion, representing himself as an agent or attorney who could recover these interests for their benefit; taking from them divers sums of money for costs, expenses, and compensation for such services.  During the term of imprisonment imposed for this crime, he escaped from the penitentiary where he was confined in Ohio, and, going to Michigan under an assumed name, resumed the use of the mails in the promotion of a similar scheme of delusion and fraud, for which he was again arrested and indicted.  He was, however, returned to the penitentiary in Ohio to complete the term of imprisonment for the first crime, at the end of which he was taken to Michigan, tried, convicted, and again imprisoned for the second offense there committed.  He has recently completed this second term of imprisonment, at the end of which he was brought again into this district for trial under these indictments for subornation of perjury.  This explains the long delay of more than 10 years in the disposition of these cases.

There were two trials in this court of the eight consolidated cases against the defendant for the fraudulent use of the mails.  The first resulted in a mistrial, the jury being unable to agree, whereupon the court ordered an immediate retrial before another jury; there being in attendance a large number of witnesses that the government had brought from London, New York, and other places in the United States, whom it would have been difficult to reassemble at the next term of the court, as well as expensive.  During the interval of 10 days necessary to summon a new venire of jurors for the second trial, these witnesses were detained upon bond or recognizance for appearance at the second trial.  There were introduced on the second trial, in behalf of the defendant, four young men—Heatly, Brockway, Gleason, and Smith—who testified to the matters and things set forth in the indictments now under consideration.  These witnesses were strangers in the community where the trial took place, and came from New York to testify for the defendant.  It appeared in the proof relating to their testimony that during the interval of the trial the defendant had gone to New York to procure their attendance, and brought them back with him to Jackson, Tenn., where the trial took place.  These four witnesses, after giving their testimony, on the application of the district attorney, were held for appearance before the grand jury upon an accusation for perjury; and, the court having directed a special grand jury to be assembled, there were returned against them indictments for perjury, upon which they were tried and convicted, and sentenced to the same penitentiary to which Howard had been sentenced for his offense.  The same grand jury on the 23d of February, 1894, returned these four indictments against Howard for subornation of perjury, for which these witnesses were convicted, as above stated.  Also it is proper for a better understanding of the alleged defects of these indictments to state somewhat more at large than appears by their averments the testimony of these four

witnesses, on which this charge of subornation is predicated, as it appears in the records of that trial.

The defendant had been indicted in some of the eight cases consolidated under the aliases of Joseph Leger, E. Ross, and William Lord Moore, respectively, and it was proved on the trial that he had mailed letters with the signatures of these names, respectively, and otherwise used them in his operations that were alleged to be a criminal misuse of the mails. It was also proved that he maintained offices in the city of New York and in the city of London, from which the letters and other documents so signed by him with these fictitious names were issued and mailed; the one in London, where he used the name of William Lord Moore, being located at No. 5 Ingersoll Road; those in New York, at street numbers not necessary now to mention. The perjuries of the four witnesses related to the defendant's identity as the person using these names at those places, and they swore, as stated in these indictments, that they knew, worked for, and were otherwise familiar with the men called Leger, Ross, and Moore at these offices in New York and London, and that the defendant was not the man so using the mails at either one of these places; that being the issue upon which the perjuries arose. In order to discredit this testimony, the government proved on the trial that during the interval between the first and second trials the defendant went to the city of New York, put up at a hotel under an assumed name, and advertised that he wanted to employ young men to go South with him as clerks in a business office at good salaries; that, among the numerous offers he had in response to this advertisement, he selected these four young men, and then and there, or subsequently, after he had brought them to Jackson, where the trial was had, made the bargain of subornation set up in these indictments, and afterwards, on their indictment and trial, each of these young men confessed and pleaded guilty to the truth of this employment to falsely swear to the facts above set forth in behalf of the defendant. The government did not bring to trial at that time these indictments, but allowed them to lie over until now they are resuscitated for the purpose of pursuing the prosecution against the defendant for the alleged subornation. The defendant has filed a demurrer to each of the indictments, and, by leave, a second demurrer to each of them, by which the sufficiency of the indictments as a pleading is challenged.

The four indictments are not identical in their framework, but the dissimilarities are quite immaterial, and, where important, will be noticed in the progress of this opinion. For a comprehensive understanding of the issues of law raised by this demurrer, it is quite necessary to here set out one of the indictments in full, and it will be found reproduced in the statement. Similarly it is necessary to set out the demurrers in full, and they are also copied in the statement.

There will be found an approved precedent of an indictment for subornation of perjury in Archbold's Criminal Pleadings (3d Am. Ed.) 433, A. D. 1835, which is a reproduction of the second English edition of that work, which states the law of the subject as it existed

in England nearest to the time of the enactment of our federal crimes act in 1790, and nearest to the statute of 23 Geo. II, c. 11, from which our sections 19 and 20 of the crimes act of 1790 (Rev. St. §§ 5396, 5397 [U. S. Comp. St. 1901, p. 3655]) are almost an exact copy. This edition, like the first edition of Daniell's Chancery Practice in equity law, more nearly exhibits the law of criminal procedure as it existed in England at the time of the organization of our federal courts, and which is binding upon them by virtue of the statutes of criminal procedure then passed and still in force, than any subsequent edition, taking notice of changes in the English law not binding on our federal courts, can do. See Mr. Justice Bradley's note, 114 U. S. 112, 5 Sup. Ct. 792, 29 L. Ed. 107; also note, 21 Fed. 766, and preface Bates Federal Eq. Pr., A. D. 1901. It is only necessary to lay before us the precedent from Archbold's Practice, and to carefully compare and contrast it with the indictments in this case, to see how glaringly defective they are as specimens of the pleader's art, and why it is that the learned district attorney, in his effort to sustain them, is compelled, at almost every sentence of the indictments, to rely upon some intendment or inference or implication or equivalency of words and phrases. It is proper here to state that it is known that these indictments were not drawn by the learned district attorney, now. deceased, whose name appears officially signed to them. He was known at this bar as a careful and skillful pleader. He came into the office of district attorney only five days before the finding and return of these indictments, had no part in the original trials of the Howard cases, and, no doubt, he merely affixed his official signature to indictments found already prepared when he took the office.

But glaring as these defects appear, upon a comparison of these indictments with the approved precedent of Archbold, it remains to determine with the utmost carefulness whether the defendant can escape prosecution and punishment for this alleged offense by reason of these imperfections in the indictments. Do they concern matters of substance, or are they mere defects of form, cured by the saving grace of our act of June 1, 1872 (chapter 255, § 8, 17 Stat. 198, Rev. St. § 1025 [U. S. Comp. St. 1901, p. 720])? The district attorney has very pertinently called our attention to the fact that this act of 1872, which enacts that no indictment shall be affected by reason of any defect or imperfection in matter of form only, was passed after the above-cited act of 23 Geo. II, and after our act of 1790 (Rev. St. §§ 5396, 5397 [U. S. Comp. St. 1901, p. 3655]) in relation to perjury and subornation of perjury, and therefore that these old acts upon the subject have been materially modified by this later act. If this be so, however, it only results that that which is a mere matter of form under Rev. St. §§ 5396, 5397, is cured by Rev. St. § 1025, while that which is matter of substance to the indictment is still liable to challenge by demurrer, and we have presented over again the question whether these grounds of demurrer concern matters of substance or form. It will be found, I think, that no court in this country adheres more strictly to matters of substance in criminal procedure, and discards more liberally mere matters of form, than the Supreme Court

of the United States and the federal courts generally. These courts are not subject to the criticism of the careful and able writer of the article on "Indictments" found in 10 Enc. Pl. & Pr. 482, where he calls attention to the fact that, while the English courts have abandoned to a great degree their old adherence to the technical niceties of criminal pleading, the American courts very largely adhere to the former strictness in that regard. The federal courts, at least, I think, follow the admonition of Sir Matthew Hale and Lord Ellenborough, as quoted by that writer, when they say that, "if the sense be clear, nice exceptions ought not to be regarded," and "unseemly niceties should not be indulged," nor "an overeasy ear be given to exceptions whereby more offenders escape than by their own innocence, to the shame of the government, to the encouragement of villany, and to the dishonor of God."

It may be here remarked that we certainly have gained nothing by the enactment of 23 Geo. II, c. 11 (Rev. St. §§ 5396, 5397), if by judicial construction, such as we find in some of the cases cited by the learned counsel for the defendant, we are to reincorporate into these indictments, through an expansion of the word "substance," all the discarded impedimenta of the common law; the reform promised by the preamble, wherein it is stated that, "by reason of difficulties attending prosecutions for perjury and subornation of perjury, these heinous crimes have gone unpunished, for the remedy whereof it is enacted" (1 Hawk. P. C. 334, § 26; 2 Bish. Cr. P. 907), goes for naught; and the language of the act, "It shall be sufficient to set forth the substance of the offense charged upon the defendant," becomes, by that expansion, nugatory.

It is conceded, however, by the district attorney, that, notwithstanding these reformatory statutes, it is still necessary to aver in an indictment for subornation of perjury all the essential elements of the original perjury committed by the witness suborned, just as if that witness himself were on trial for the crime of perjury, and it is by that rule that we must test these indictments. 16 Enc. Pl. & Pr. 318. The general demurrer is that under this rule no crime is charged by these indictments, because they would not be sufficient to support an accusation of perjury against the witnesses suborned. There are, in the two demurrers filed, seven specific grounds of objection alleged, but substantially, with unimportant exceptions, they combine themselves into three several defects: (1) that these indictments do not anywhere show, by distinctive averment, that any one of these witnesses accused of perjury was ever, in fact, sworn to speak the truth, the whole truth, and nothing but the truth, as required by law to constitute that offense; (2) that neither of these indictments contains any averment that, being so sworn, either of these witnesses did willfully commit the crime of perjury in the particulars alleged in the indictment against him, as required by Rev. St. § 5392 [U. S. Comp. St. 1901, p. 3653], defining the crime of perjury; (3) that in neither of these indictments is it anywhere alleged that the matter concerning which the alleged perjury was committed was material to any issue arising in the progress of the trial of the Howard cases,

as required by the definition of perjury contained in Rev. St. § 5392. If the indictments are defective in any of these particulars, it is fatal to their sufficiency, and they must be quashed.

The district attorney is certainly correct in his contention that Rev. St. § 1025, precludes the necessity that either one of these essential averments in an indictment for perjury shall be made in any particular form, no matter how that form may be sanctioned by precedent and long usage; if the averment appears in any form, or may, by fair construction, be found anywhere within the text of the indictment, it is sufficient. 10 Enc. Pl. & Pr. 472 et seq.; Markham v. U. S., 160 U. S. 319, 324, 16 Sup. Ct. 288, 40 L. Ed. 441; Caha v. U. S., 152 U. S. 211, 221, 14 Sup. Ct. 513, 38 L. Ed. 415; Cochran v. U. S., 157 U. S. 286, 290, 15 Sup. Ct. 628, 39 L. Ed. 704; Evans v. U. S., 153 U. S. 584, 587, 14 Sup. Ct. 934, 38 L. Ed. 830; Price v. U. S., 165 U. S. 311, 315, 17 Sup. Ct. 366, 41 L. Ed. 727; Pointer v. U. S., 151 U. S. 396, 419, 14 Sup. Ct. 410, 419, 38 L. Ed. 208, where it is stated that, "while the record of a criminal case must state what will affirmatively show the offense, * * * all parts of the record are to be interpreted together, effect being given to all, if possible, and a deficiency at one place may be supplied by what appears in another"; Crain v. U. S., 162 U. S. 625, 637, 650, 16 Sup. Ct. 952, 40 L. Ed. 1097; Rosen v. U. S., 161 U. S. 29, 34, 40, 50, 16 Sup. Ct. 434, 480, 40 L. Ed. 606; Ledbetter v. U. S., 170 U. S. 606, 610, 612, 18 Sup. Ct. 774, 42 L. Ed. 1162; Keck v. U. S., 172 U. S. 434, 437, 19 Sup. Ct. 254, 43 L. Ed. 505; Coffin v. U. S., 156 U. S. 432, 449, 15 Sup. Ct. 394, 39 L. Ed. 481; U. S. v. Rhodes (C. C.) 30 Fed. 431, 434. These cases abundantly illustrate how the Supreme Court of the United States, in construing our statutes relating to criminal procedure, and particularly Rev. St. § 1025, strictly adhere to the rule of substance and certainty, and yet how liberally they discard niceties of form only, and requirements that are not material to save the rights of the defendant to be notified of the nature of the offense with which he is charged, and to enable him to plead any judgment which may be rendered in the case as a bar to subsequent prosecution, which is all that he has a right to demand; bearing in mind, also, that these words, "substance and certainty," are in their own signification indefinite, as was ruled by the House of Lords in Rex v. Horn, 2 Cowp. 672; 10 Enc. Pl. & Pr. 473.

It will be convenient to treat the specific grounds of this demurrer, as counsel have argued them, somewhat out of their own numerical order, beginning with the first ground set up as an objection to the indictment in the second of the demurrers filed. That objection relates to the fact that in each of these indictments the pleader has left the date alleged for the commission of the offense in blank as to the day, giving only the month and year. This is contrary to the precedent above cited from Archbold, and, like the use of initials only in these indictments, when the full Christian names of the defendant were well known, is contrary to good pleading, and careless, if not slovenly. At common law on demurrer the defect was fatal. Arch. Cr. Pl., supra; Id. 38; Id. 27; 10 Enc. Pl. & Pr. 511; Id. 504; 14.

Enc. Pl. & Pr. 273; 1 Bish. Cr. Pro. (3d Ed.) 387; Hughes, Cr. Pro. 2750; U. S. v. Bowman, 2 Wash. C. C. 328, 24 Fed. Cas. 1212, No. 14,631; U. S. v. Law (D. C.) 50 Fed. 915. The case of U. S. v. Bowman, supra, by the learned Mr. Justice Washington, occurred in 1808, long prior to the passage of our statutes of 1872 (Rev. St. § 1025); and he, no doubt, considered that none of the English statutes of amendment and jeofailes passed in England prior to the settlement of our country had any effect to alter or modify the rigors of the common law in this regard in criminal cases. 1 Bish. Cr. Pro. § 707; 2 Bish. Cr. Pro. § 907. But it is entirely clear that the federal act of 1872 (Rev. St. § 1025) did modify the rule of the common law upon this subject, as stated by Mr. Justice Washington, if the use of a blank date be only a matter of form, and not substance, and does not tend to the injury of the defendant. That it falls within this category, I have no doubt. A very marked distinction must be remembered in this matter of pleading dates between those cases where a particular day is of the essence of the offense, as if a statute should punish an offense committed on Sunday because of an appreciation of its sabbatical quality, or some like relation of the day to the offense, and those cases in which the day is relatively of no materiality, or nearly so. Judge Brown calls attention to this distinction, as applicable to perjury cases, in the case of U. S. v. Matthews (D. C.) 68 Fed. 880; and Judge Goff in the case of U. S. v. Conrad (C. C.) 59 Fed. 458; and it was possibly overlooked in the case of U. S. v. Law, 50 Fed. 915, decided upon the authority of a Virginia case probably governed by the local statutes of that state. However, in that case the perjury was predicated of an affidavit, and the case may be said to fall within the first of the above categories, as one in which the date is of the essence of the offense, because the exact day is required to describe the particular affidavit or other document, by swearing to which the perjury was committed. Whatever may be thought of these cases, it is sufficient to say that U. S. v. Matthews, supra, was affirmed by the Supreme Court of the United States in the case of Matthews v. U. S., 161 U. S. 500, 16 Sup. Ct. 640, 40 L. Ed. 786, where it was held that a variance between the date laid and the date proven was not material, and the opinion of Judge Brown in the court below upon that subject was approved and concurred in by the Supreme Court; and the case of U. S. v. Conrad, supra, was cited approvingly in Ledbetter v. U. S., 170 U. S. 606, 612, 18 Sup. Ct. 774, 42 L. Ed. 1162, where it was definitely decided that while good pleading undoubtedly requires an allegation that the offense was committed on a particular day, month, and year, the omission to state a particular day is not fatal; at least on a motion in arrest of judgment, because ordinarily the proof of any day before the finding of the indictment, within the statute of limitations, would be sufficient. Such an omission is no more fatal upon demurrer than upon a motion to arrest judgment, and for precisely the same reason, in that class of cases where the particular day is not of the essence of the offense. It was so held in relation to the defective statement of the year in the case of Peters v. U. S., 94 Fed. 127, 133, 36 C. C. A. 105, in

which a certiorari was denied by the Supreme Court. Peters v. U. S., 176 U. S. 684, 20 Sup. Ct. 1026, 44 L. Ed. 638. And it is stated by Judge Shelby in Hume v. U. S., 118 Fed. 689, 696, 55 C. C. A. 407, 414, that, "in the absence of a special reason rendering it important, this allegation is mere form, and the time proved need not be the same as that laid in the indictment"; the difficulty being cured by Rev. St. § 1025. It was so held, also, in the case of U. S. v. Jackson (C. C.) 2 Fed. 502; and, even in a case of murder, it was held by the Supreme Court of the United States that the date named in the indictment for the commission of the offense is not an essential averment. Proof that the crime was committed days before or days after the date named is no variance. Hardy v. U. S., 186 U. S. 224, 225, 226, 22 Sup. Ct. 889, 46 L. Ed. 1137. The same thing is true as to the date of the alleged subornation of perjury, and therefore it falls within the principle of these cases, and belongs to the first of the categories above mentioned, in which the date is not of the essence of the offense, and its omission is a mere matter of form, cured by Rev. St. § 1025 [U. S. Comp. St. 1901, p. 720]. In U. S. v. Potter (C. C.) 56 Fed. 83, 95, it is remarked by Judge Putnam that:

"On principle, allegations of time in criminal pleadings ought to be made with approximate accuracy; yet, by authority of a practice which has now continued so long that it must be yielded to, time need not be proved as stated, and these allegations touching it are the most useless portions of criminal pleadings."

He holds that the statements as to time are purely formal, and the defect is cured under Rev. St. § 1025.

In MacDaniel v. U. S., 87 Fed. 324, 326, 30 C. C. A. 670, in discussing Rev. St. § 1025, attention is called to the fact that the authorities show that, even in perjury, courts of the United States are liberal in applying the statute for curative purposes to defective indictments for that offense. These authorities make it indisputable that stating the day on which the offense was committed in blank is not fatal to these indictments, and that ground of demurrer is therefore overruled.

In considering the other grounds of this demurrer, it may be generally stated as to all of them that the draftsman of these indictments seems to have proceeded forgetfully of the rule conceded by the district attorney in the argument—that, in charging subornation of perjury, it is necessary to carry within the indictment every essential averment concerning the perjury itself by the witness suborned, just as if that witness were accused by the same indictment of the perjury for the purpose of placing him on trial for that offense. The indictments lay hold of Howard vigorously enough for his bargain of subornation, and quite closely and technically follow our statute defining perjury (Rev. St. § 5392), when describing that which the suborned witnesses did in giving their testimony which constituted the offense, and, in describing Howard's knowledge of that which they did in that behalf, the indictments quite fully accuse him of well knowing the elements that constitute the crime of perjury as defined by the statute; but they do not formally and technically, as required by the precedents in indictments for perjury itself, aver these particulars of the offense as against the witness suborned. Therefore the district attor-

ney, in supporting them as against the force of these demurrers, is constantly invoking us to infer or imply these particulars as against the witness suborned from the averments of the indictments concerning Howard's knowledge and conduct in the commission of his part of the offense of procuring or suborning the perjury. He also brings to his aid in support of indictments the statements of the caption and the commencement, technically not a part of the indictments, and asks us to couple these with the allegations against Howard for his part of the crime committed by him, in order to find from the whole document an intendment to charge, as against the suborned witnesses, all the particulars of the crime of perjury itself. He also relies upon the doctrine of equivalents, and at every turn of the argument he must resort to inference, implication, intendment, equivalency, and outside records to meet the objections presented by the demurrers. It must be conceded to the district attorney, on the authority of the cases already cited to that effect, that Rev. St. § 1025, relieved the draftsman of these indictments from the necessity of stating these essential averments of the perjury committed by the suborned witnesses in any particular manner, and that, if they be stated in any form whatever, no matter how or where within the indictment, the pleading is good, for, as ruled by Mr. Justice Brewer in U. S. v. Rhodes (C. C.) 30 Fed. 431, 434, when he was a circuit judge, such is the effect of that statute. He there says that:

"While a defendant should be clearly informed in the indictment of the exact and full charge made against him, yet no defect or imperfection in matter of form only—and this includes the manner of stating a fact—which does not tend to his prejudice will vitiate the indictment." Citing Rev. St. § 1025; U. S. v. Noelke (C. C.) 1 Fed. 426; U. S. v. Jackson (C. C.) 2 Fed. 502.

Bearing this general characteristic of these indictments in mind, we are the better prepared to go into that analysis of them which is necessary for the decision of this demurrer. The first ground of the original demurrer and the second ground of the supplemental demurrer are so closely related to each other that, although they set up somewhat separate and distinct objections, it will be convenient to treat them together, as in the sense of relative importance they concern that defect which is of the most consequence.

The gist of the objection is that it is not shown by the indictments that the suborned witnesses were ever sworn at all to speak the truth, the whole truth, and nothing but the truth. It will be observed by turning to the precedent for subornation of perjury before referred to, in Archbold, that this fact is thus pleaded:

"The said J. N. did then and there appear as a witness for and on behalf of the said J. W., the defendant in the plea above mentioned, and was then and there duly sworn and took his corporal oath upon the Holy Gospel of God before the said Charles Lord Tenderden, his Majesty's chief justice as aforesaid, that the evidence which he, the said J. N., should give to the court there, and to the jury so sworn as aforesaid, touching the matter then in question between the said parties, should be the truth, the whole truth, and nothing but the truth; he, the said Charles Lord Tenderden, chief justice as aforesaid, then and there having sufficient and competent authority to administer the said oath to the said J. N. in that behalf."

132 F.—22

It is agreed by the learned district attorney that there is no such averment as this in these indictments, but he says that which is averred by them is equivalent to it. But it is manifest upon the most careful reading of the indictments that this equivalency is wholly a matter of inference to be drawn from words and phrases used for an altogether different purpose than any statement of such a fact. Now, it is quite true that one cannot read these indictments without the suggestion of an irresistible inference that these witnesses were sworn at the time of the Howard trial, and that that which the indictments declared to have occurred in the conduct of ·Howard in relation to his subornation of the perjury was completed by the commission of the perjury itself on the part of the witnesses. But this inference is either purely philological, or, rather, etymological, or else it arises from such an inference as that in combination with that general knowledge of the reader of the pleading about the procedure .of courts, the trial of causes, and the swearing of witnesses gained by the reader outside of these indictments. It is just the same as if the indictments had simply averred that these witnesses committed the crime of perjury. Etymologically the significance of that word is the false swearing upon oath lawfully administered in some judicial proceeding. Worc. Dic. "Perjury;" 2 Bouv. Dic. tit. "Perjury." The very use of that technical word, and a word of common import as well, essentially implies swearing in a judicial proceeding at common law, or before any authorized official or tribunal not judicial when such swearing is declared by statute to be perjury. It also implies in this sense all the technical elements of the crime, such as willfulness, falsity, being lawfully sworn in judicial proceedings, and materiality to some issue depending in such proceedings. The word "oath," so much depended upon by the district attorney, does not necessarily imply perjury, for an oath may be taken outside of judicial proceedings or by other lawful authority, and, although false, would not be perjury, but only foreswearing, wherefore such an intendment or implication could not be based upon the bare use of that word; but the word "perjury" implies the whole crime, etymologically. Yet it cannot be denied that the use of such a word does not supply specific averment of the fact of swearing in a judicial proceeding to constitute perjury. To depend upon such an implication in an indictment for subornation of perjury, or for perjury itself, is simply to charge a conclusion of law, and not of fact. It is true that the use of technical words sometimes supplies the want of more specific averment, the use of the word being in itself purely technical; but this rule does not apply to words of common import, although they may be also of technical significance in certain uses. 10 Ency. Pl. & Pr. 472, 473, 476, 479. It is a familiar rule, particularly in criminal pleading, that, whatever form the language takes, it must charge the fáct. As Judge Brewer says, the manner of charging it is not as important as it used to be at common law, but nevertheless, if it be a matter of substance, the fact itself must be averred; and there can be no question that it is necessary, in an indictment for perjury or, subornation, that it must be in some manner averred as a fact that the witnesses

were sworn. 2 Russ. Cr. 596; 3 Arch. Cr. Pl. (Ed. 1853) 591. The defendant goes further, and says it must be averred that they were sworn in a certain way, and by officials having authority, but for the present we will confine the consideration to the simple fact of the swearing itself. These indictments start out with a statement that an indictment was returned against Howard for violating the postal laws; that there were eight of these indictments, and that they were consolidated; that Howard was arraigned; and that he pleaded not guilty to the consolidated indictments. They then charge that Howard "did unlawfully procure one Edgar E. Smith, for and on behalf of himself, the said defendant in the said causes, falsely, upon oath, as a witness for the said defendant, to depose, say, and give evidence before the court and jury then and there duly impaneled and sworn to try the issues raised by the said plea, that he, the said Edgar E. Smith," etc. This is a somewhat clear and sufficiently technical averment of the subornation by Howard, but it does not relate to anything done by Smith, and does not charge any fact as to his conduct in the premises. The corresponding language of the Archbold precedent before cited is that the defendant—

"Unlawfully, corruptly, wickedly, and maliciously did solicit, suborn, instigate, and endeavor to persuade one J. N. to be and appear as a witness at the trial of the said issue for and on behalf of the said J. W., the defendant in the said issue, and upon the said trial falsely to swear and give in evidence, to and before the jurors which should be sworn to try the issue aforesaid, certain matters material and relevant to the said issue, and to the matters therein and thereby put in issue, in substance and to the effect following; that is to say," etc.

Our pleader contents himself with simply stating that the defendant did "unlawfully procure one Edgar E. Smith, falsely, upon oath, as a witness, to depose"; but, although our pleader's language is not so clearly defining a bargain by the suborner that the proposed witness should in the future swear falsely in his behalf at the trial, it is none the less an averment of that import, and confined to that purpose, and it is only by a most constrained inference that we can say that this phraseology of our pleader is a charge of the fact that the oath was taken before the court at the trial. Evidently this pleader assumed that that was done, and intended to charge only that Howard procured it to be done. The end of it all is that we are asked to sanction this assumption of the pleader as a good pleading of the fact assumed. We cannot disguise and dress the assumption in the garb of an intendment or a necessary implication in order to support these indictments.

The indictments next aver that in truth and in fact the said Edgar E. Smith—

"Then and there, in Jackson aforesaid, before the said court, upon a trial of the said consolidated causes, did not believe that he knew one William Lord Moore, at No. 5 Ingersol Road, London, England, and did not then and there believe that he met the said William Lord Moore at No. 5 Ingersol Road, London, England, and that he did not, in truth and fact, meet the said William Lord Moore at No. 5 Ingersol Road, London, England, and that he did not then and there, and never knew any William Lord Moore," etc., "and in truth and fact the said Edgar E. Smith did not work for the said William Lord Moore," etc., "and did not believe that he ever worked for the said

William Lord Moore, as he so swore on the said trial, and in truth and in fact the said Edgar E. Smith did not believe at the said trial, when he so swore that the defendant on trial, G. F. B. Howard aforesaid, was not the same person as William Lord Moore, and in truth and in fact said Edgar E. Smith, at said Jackson, when he was so sworn as aforesaid, did not believe," etc., "and in truth and in fact the said G. F. B. Howard, at the time when he did so then and there procure the said Edgar E. Smith to so falsely depose, say, and give in evidence upon his oath before the court and jury as aforesaid, then and there well knew that the said Edgar E. Smith would not give his evidence as aforesaid according to the truth, and well knew that the said evidence to be so given before the court and jury by the said Edgar E. Smith was false, willful, and contrary to the oath so to be taken by the said Edgar E. Smith, and contrary to the said Smith's belief."

Evidently there can be picked and sifted out of the foregoing phraseology words that imply that the suborned witness was sworn at the trial, but just as evidently as before these words assume the fact, instead of charging it, either directly or by legal inference or intendment. The first part of the paragraph above quoted from the indictment discloses its purpose, which was to aver, not that the witness Smith was sworn in a judicial proceeding then and there pending, but that he did not believe the things which it was previously stated in the indictment Howard had procured him to swear in his behalf, and which the pleader assumed that the witness Smith had sworn to according to his bargain; the general accusation being that Howard had made a bargain with the witness, which was criminal, because the witness did not believe the facts to be sworn to; following the language of Rev. St. § 5392 [U. S. Comp. St. 1901, p. 3653], in its definition of perjury. This purpose is also more distinctly disclosed and confirmed in the last sentence of the paragraph of the indictment above quoted, where it is stated that Howard, at the time when he procured the false testimony, well knew "that the said evidence to be so given before the court and jury by the said Edgar E. Smith was false, willful, and contrary to the oath so to be taken by the said Edgar E. Smith, and contrary to the said Smith's belief." The district attorney does not deny this purpose of the paragraph, but, relying upon the principle already conceded to him, that if anywhere in the indictment the fact appears that the witness was sworn, it is a good indictment, he plants himself upon such words as these: "As he so swore on the said trial;" "when he so swore that the defendant on trial, G. F. B. Howard, aforesaid;" "at said Jackson, when he was so sworn as aforesaid, did not believe," etc. Giving to these words every possible force that they bear in their descriptive sense, and segregating them from their obvious use for another purpose, as above set forth, and permitting them to be applied to a different use in an averment intending to charge that the witness was sworn, we have only to compare it with the ingredients of the allegation in that behalf already quoted from the Archbold precedent to see how far they fall short of meeting this permitted use. It is all a matter of inference based upon the use of the word "swore" in the quotations last above made. That word does not technically and necessarily imply a judicial administration of an oath. Any utterance or an affirmation, with an appeal to God, is to swear an oath, no matter how or before whom the utterance is made. That is its

common import. In law it undoubtedly has a more technical meaning, and implies that the swearing has been officially done, but not necessarily judicially done; but, to raise the inference in favor of these indictments which the district attorney insists upon, we must discard the common import, and, because it is used in an indictment, we must give it a technical meaning, and imply that the swearing was done according to the lawyer's knowledge of the way a judicial or official oath is administered. This is too much implication for criminal pleading, and it does not come anywhere near, in either technical or untechnical, equivalency for the corresponding averment found in the Archbold precedent for perjury or subornation of perjury, as above quoted. It is impossible to hold that these indictments have averred that the suborned witnesses were lawfully sworn to speak the truth, the whole truth, and nothing but the truth, either upon the Gospels or by uplifted hand, or in any other permissible way in judicial proceedings. We cannot assume the fact in the face of this demurrer, as it was assumed by the draftsman of these indictments. The authorities show that the fact must be directly stated in the indictment, either by specific allegation to that effect, or necessary intendment from that which is stated in the indictment. 2 Hawk. P. C. 354, § 111; 2 Russ. Cr. 596; 3 Russ. Cr. (3d Eng. Ed.) 632; 3 Arch. Cr. Pl (Ed. 1853) 591; 2 Bish. Cr. Pro. (3d Ed.) 912, 913, 914; 2 Chit. Cr. L. 309; Id. 316. We cannot agree with the learned counsel for the defendant that in drawing our indictments for perjury this allegation as to the swearing of the witness must show the name of the judge who took the oath, or the name of the clerk who administered it, according to the fact 2 Bish. Cr. Pr. (3d Ed.) 910, note 2; 1 Russ. Cr. (5th Eng. Ed.) 44–46. In U. S. v. Babcock, 4 McLean, 113, 24 Fed. Cas. 928, No. 14,488, it is said:

"There can be no doubt that the clerk, in the presence of the court, or any other person acting in the sanction of the court, is authorized to administer oaths. It is an act of the court, in such a case, and not an act done by authority of the individual who administered the oath."

Even where the person administering the oath has no authority otherwise, the power to do so in the presence of the court, and by its express order, cannot be questioned. U. S. v. Nihols, 4 McLean, 23, 27 Fed. Cas. 151, No. 15,880; U. S. v. Evans (C. C.) 2 Fed. 147, 152, 2 Flip. 605. It is true that the name of the judge appears in the Archbold precedent, but we think that arises out of a peculiarity of the English method of constituting courts. In the case stated in the Archbold precedent, Lord Chief Justice Tenderden had been "assigned to hold the pleas in the court of our said lord, the king, at Westminster aforesaid, in the county aforesaid," which is set forth in the indictment. Our judges are not so assigned, but hold the court by virtue of their authority under their commissions and the statutes constituting the courts over which they preside. Of these courts and judges we take judicial notice, and that of which we take judicial notice need not be alleged. 10 Enc. Pl. & Pr. 476; Babcock v. U. S., 34 Fed. 873. Wherefore, if these indictments had contained an averment that the witnesses were duly sworn before the court, properly described, upon their oaths, to speak the truth, the whole

truth, and nothing but the truth, judicial notice by reference to the public records and the records of the court itself at the particular session during which the case was tried, would pretermit any necessity for naming the judge or other official who administered the oath. This question is raised by these demurrers, but, in the absence of any averment that the witness was sworn at all, it is perhaps unnecessary to decide it.

The grounds of the demurrer now being considered present two other very important questions as to the sufficiency of these indictments, but, in view of what has already been said upon the subject of necessity for swearing witnesses, it is thought to be hardly necessary to consider or decide them. First, it is objected that it is nowhere alleged in the indictments by what court or before whom the suborned witnesses were sworn; secondly, it is objected that it is not alleged that the court or person administering the oath had authority to administer the same. However, it may be well enough to point out the bearing of these two objections upon that which has just been disposed of. As before, it is conceded that these indictments do not in specific terms designate the court before which the alleged perjury was committed, nor in which the trial of Howard was had, nor in which the issue was pending to which the indictments relate, unless we can refer to the caption of these indictments in aid of this omission, and it is the contention of the district attorney that we may do this. The caption, it will be observed, from the copy of the indictment supra, designates the court with technical particularity in which these indictments were found. But this is wholly beside the question, which is not in what court these indictments were found, but in what court were the perjuries committed—an altogether different matter and a matter of acknowledged substance. The presiding judge here knows outside of these indictments that the alleged perjuries were committed in the court designated in the caption of these indictments, because he presided at the Howard trial, which took place in that court; the learned counsel for the defendant also knows that fact outside of these indictments, because he defended Howard then as now; and the public history of those trials, and the records of this court designated in the caption, show that those trials took place in that court. But it is obvious that such knowledge as this cannot aid the insufficient averments of these indictments. Again, we also judicially know that contemporaneously with the sitting of the United States District Court for this district at Jackson at the time of the Howard trials—that being the court mentioned in the caption of these indictments—there was another court of the United States sitting, which had, under the law, concurrent jurisdiction of the offenses for which Howard was being tried. The indictments against him for the criminal misuse of the mails might have been found in the Circuit Court, trials might have taken place in that court, and the perjuries of the suborned witnesses might have been committed in that court. Therefore it goes without saying that these indictments should definitely state in which of these two courts the trials were had and the perjuries committed. Now, then, the caption of these indict-

ments relied upon by the district attorney as a sufficient averment that they took place in the District Court, and not in the Circuit Court, does not in itself show or tend to show that fact. It does show that these indictments for subornation of perjury by Howard were duly and lawfully found and presented in that court. The technical commencement of the indictments also shows that the grand jurors were duly elected, impaneled, and sworn, and that upon their oaths they made the presentment of the grand jury to that court in a lawful manner. But this is the only function belonging to the caption and commencement, for it seems well settled that, while they constitute a part of the record of the criminal proceeding against Howard for subornation of perjury, they are not technically or substantially a part of the indictments themselves. 1 Enc. Pl. & Pr. 693; 10 Enc. Pl. & Pr. 418, 419, 421, 424, 425, 428; Arch. Cr. Pl. 26; 1 Chit. Cr. L. 226; 1 Bish. Cr. Pro. (3d Ed.) 653, 551, 662, and notes; Id. (1st Ed.) § 154.

These authorities also show that the common-law prohibition against any amendment of an indictment does not apply to the caption or commencement, for the very reason that they are not a part of it. They are exempt from that rigor which obtains even now in matters of substance against amendments only, because they are so wholly outside and apart from the indictment itself. The district attorney has not cited a single case which decides that you may look to the caption or the commencement to aid imperfect or uncertain allegations in the body of the indictment. The case of Dean v. State, Mart. & Y. 127, only decides that you may look to the caption to show the court in which the indictment is found, and that that fact need not appear in the indictment itself; that being the office of the caption. The case of Noles v. State, 24 Ala. 672, is to the same effect. But neither of these cases holds that you may refer to the caption or commencement for the purpose of making more certain any of the essential averments relating to that part of the indictment which charges the offense. The authorities already cited all show that the caption and commencement may be amended and made to show anything that falls within the office of either of them, according to the fact; and McBean v. State, 3 Heisk. 20, holds that any defect or insufficiency in the caption or commencement may be aided by any statement found on the face of the indictment, but it gives no support to the converse of that proposition. And it was held in State v. Long, 1 Humph. 386, that, if the caption does not show that the grand jury was sworn, it does not vitiate the indictment, and it seems that in Tennessee it need not be amended in that regard. The Tennessee cases go no further than to hold that the caption, when defective, may be either amended or the defect disregarded, but, so far as I can find, not one of them suggests even that either the caption or the commencement may be used for any other purpose than the performance of their own parts in the procedure; that is to say, to show by its record the particular court in which the indictment was found, and the manner of the finding of it.

In Crain v. U. S., 162 U. S. 625, 633, 16 Sup. Ct. 952, 40 L. Ed.

1097, it was held that one count in an indictment might refer to another to avoid unnecessary repetition, and the effect of such reference was to incorporate the matter into the incomplete count. But it does not follow from this that the caption or commencement may be so incorporated into an indictment; they not being a part of it, but only an outside record relating to it. In U. S. v. Thompson, 6 McLean, 56, 28 Fed. Cas. 98, No. 16,490, it was held that the caption is no part of the indictment, and therefore may be amended after verdict as to a clerical error; referring to the language of Lord Mansfield, 1 Saund. 250, which is the basis of most of the authorities permitting amendments of the caption. The Supreme Court of the United States adheres very strictly to the rule that there can be no amendment of an indictment in our practice, even in matters that are immaterial, without a violation of the fifth amendment of the Constitution of the United States; and, of course, it can no more be amended under the disguise importing into it outside records or documents by implication and intendment than by a more direct process, which is not permitted under the Constitution. Ex parte Bain, 121 U. S. 1, 8, 7 Sup. Ct. 781, 30 L. Ed. 849. But this rule, strict as it is, does not apply to an amendment of the caption or commencement of an indictment. Caha v. U. S., 152 U. S. 211, 221, 14 Sup. Ct. 513, 38 L. Ed. 415; Gardes v. U. S., 87 Fed. 172, 182, 183, 30 C. C. A. 596; U. S. v. Bornemann (C. C.) 35 Fed. 824. In U. S. v. McNeal, 1 Gall. 387, 26 Fed. Cas. 1132, No. 15,700, the indictment contained a distinct averment that the perjury took place before the Circuit Court held at a particular time and place. The proof showed that the Circuit Court was held on a different day, and the variance was held fatal, and the defendant acquitted. This illustrates the necessity for such a specific averment in the indictment itself, and precludes the notion that it may be left at large to be inferred by reference to what is known upon the records about the sitting of the court and the procedure in the case, such as belongs to the caption or commencement of the indictment.

Let it be said, however, that the caption may be referred to in aid of the imperfections of the indictment, and still, upon an analysis of the pleadings we have in hand, it is not shown that the oath of which the perjury is predicated was taken before the United States District Court for the Western District of Tennessee, designated in the caption. The opening sentence of the indictment states that on the 27th of October, 1893, an indictment was returned against one G. F. B. Howard for a violation of the postal laws, "to the said court, by the grand jury thereof." This merely states that that indictment against Howard for violating the postal laws was returned to the court. The indictment then historically relates that other indictments were returned "by the grand jury aforesaid," for similar offenses, to the number of eight. It then states that "said court ordered all the said indictments consolidated"; and, again, that the said defendant "was duly arraigned before the said court," and pleaded not guilty. Next, that the said Howard did unlawfully procure one Edgar E. Smith, "falsely, upon oath, as a witness for the said defendant, to depose,

say, and give in evidence before the court and the jury then and there impaneled and sworn to try the issues raised by the said plea," etc. It will be observed that the pleader drops the word "said," and we have only "the court and a jury then and there duly impaneled and sworn to try the issues," by way of affirmation. Now, if we interpret "then and there" by the preceding clauses of the sentence, we find that it refers to the words "at Jackson, Tennessee, on the ———— day of December, 1893, upon the said trial, did unlawfully procure," etc., obviously referring to the procuring of Howard at that time and place, and "upon the said trial"; but passing that primary purpose of the affirmation of the phraseology of words, "the court and a jury then and there duly empaneled," etc., upon the said trial, only indicate that some court—it might have been the Circuit Court of the United States—then and there were engaged in the trial of Howard, for we have not even the use of the word "said" to connect this phraseology with the court designated in the caption, and we can only reach an affirmation that the oath was taken before the court designated in the caption by a process of inference upon inference, implication upon implication, and intendment upon intendment, based upon a chain of quite equivocal, and, in this relation, quite inconsequential, words and phrases, and in the end leaving the affirmation of the fact that the perjury was committed before the United States District Court at Jackson on the trial of the Howard cases described in the indictment more as a matter of our own historical knowledge than from any fair and reasonable inferences drawn from the indictment itself. Surely this cannot meet the obligations of the law in regard to certainty in matters of criminal pleading, as we find it laid down in the authorities already cited

It all comes from that which was said in the beginning of this opinion, that the pleader himself had no conception in his mind of the necessity of specifically charging these facts, and we are left to supply his deficiencies of conception as to the framework of the indictment by these far-fetched inferences upon words used for a wholly different purpose, as disclosed by the ordinary grammatical construction of the phrases and sentences of the indictment. If we admit that it is shown that an oath was taken, this pleading does not show before what court the oath was taken by the suborned witness. It does show that Howard made his bargain for the procurement of the false testimony to be given at a trial to be had in the United States District Court, but it assumes all the rest with which we are concerned in such a prosecution as this. It assumes that the bargain was carried out in that court by the delivery of the false testimony according to the contract. It does not charge that fact by substantive allegations to that end, using apt words and phrases for the purpose, nor by any fair intendment to be taken from the words and phrases that are used in the pleading.

The other branch of the inquiry upon this ground of demurrer relates to the phraseology of Rev. St. §§ 5396, 5397 [U. S. Comp. St. 1901, p. 3655], heretofore referred to as being substantial copies from the statute of 23 Geo. II, c. 11; but it is linked with the other objections already disposed of in the foregoing part of this opinion,

and, in effect, is a denial that these indictments contain any allegation·that the court or person administering the oath had authority to do that thing. Of course, the demurrer assumes that the indictment properly avers that the ,oath was administered in fact, which we have already found not to be so, and also assumes that the indictment states that it was administered before a court, which also we have found not to be so. But necessarily the demurrer must assume these facts as appearing by construction or intendment from the face of the pleadings. So that, if we are wrong in the holdings we have just made, and if it be a proper construction of the indictment that the oath was administered before the United States District Court of this district, sitting at Jackson, then the question suggested does arise upon the statute cited. For a proper understanding of the framework of the indictment, we have had the district attorney make for us a synopsis of Archbold's precedent above cited, and also of one of these indictments, which synopses we place in the statement to facilitate the comparison between the two, from which it will be observed that the objection now being .considered proceeds upon the theory that the indictments in this case may be construed by the courts to be sufficient in the last above stated particulars. The exact language of the statute is "averring such court or person to have competent authority to administer the same." I wish first to call attention to the fact that that clause of Rev. St. § 5396, relating to the form of an indictment for perjury is omitted from Rev. St. § 5397, relating to the form of an indictment for subornation of perjury. Is there any significance in that omission?

It is stated by Mr. Chitty that while this provision in relation to perjury in the statute of 23 Geo. II renders it unnecessary to set forth the commission from which the authority of the court is derived, by the very terms of the statute it is made necessary to aver concisely that the court had competent authority to administer the oath, which must therefore be pursued in every indictment for this offense. 2 Chit. Cr. L. 308. Mr. Bishop seems to think that this statute of George, and the state and federal statutes which have copied it, after all that may be said, are only a re-enactment of the common law, which was not so strict in this regard as has been generally supposed, and as many cases have held. 2 Bish. Cr. Pro. (3d Ed.) 906, 909, and note. But he agrees that now, under the statute, in an indictment for perjury, the averment must name the court, and aver its authority. Id. 910. It will be seen upon a comparison of the statute of George with our Revised Statutes that the phrase above quoted is placed in parentheses in the first section of that statute, which prescribes the form of an indictment for perjury, but that phrase is altogether omitted in the second section of the English act, which prescribes the form of an indictment for subornation of perjury. See the sections quoted in full. 1 Hawk. P. C. 334; Archb. Cr. Pl. Appdx. 118. It is condensed, but so appears in Chitty. 2 Chit. Cr. L. 307, 308. Following the English model, our Revised Statute drops the parentheses, but embodies the phrase verbatim in section 5396, relating to perjury; but, like the English model, it drops the phrase altogether in section 5397, relating to subornation of per-

jury. I have not found any case that considers the legal effect of this discrimination between the two sections, but the particular phrase in question is omitted in the statute of 14 & 15 Victoria, c. 100, from both section 20 of that act relating to perjury, and section 21, relating to subornation of perjury. See 2 Bish. (3d Ed.) 907, 908, where these two sections of the statute of Victoria are quoted in full. The legal effect of this omission of the phrase found in parentheses in the statute of George from the statute of Victoria came for adjudication before the Court of Appeals in England in 1871, in the case of Reg. v. Dunning, L. R. 1 C. C. 290, 11 Cox, C. C. 651. The court there says that "this omission seems to us conclusively to show the intention of the Legislature that this allegation, or its equivalent, in the indictment, is a technical strictness which may well be dispensed with; the matter being left for proof at the trial." It was therefore ruled that the indictment was sufficient, although it did not contain any express or equivalent averment that the court had a competent or sufficient authority to administer the oath. And in Reg. v. Roberts (1878) 14 Cox, C. C. 101, it was held that there is always a presumption that the presiding judge of a court has authority to administer the oath. If this omission had this effect in relation to an indictment for perjury, why has it not the same effect when omitted from the sections of both the English and the federal statute relating to the offense of subornation of perjury? Mr. Bishop discusses these statutes, and gives the form for making this averment, and advises that it shall be made, but indicates that it was never necessary except by the express command of the statute. 2 Bish. Cr. Pro. (2d Ed.) 904, 905, 906, 907, 909, 910, 910a. It is also shown in Chitty that this averment contained in the parentheses of the statute of Geo. II was put into the English indictments only because the statute required it. Why should it be put into a statute for subornation of perjury, when that statute never did require it? The argument made by the learned counsel for the defendant against this position is that it is settled by the cases and conceded by the district attorney that an indictment for subornation of perjury must be founded in its averments about the subornation against the defendant upon each and every necessary allegation concerning the perjury of the suborned witness that is required by law to be inserted in an indictment against that witness for the perjury. He very happily calls it a circle within a circle of indictments, each of which must be complete; and it might be further illustrated by saying that his contention is that this pleader has somewhat carefully built the superstructure of his house, but has placed it upon a foundation of sand, which crumbles under the scrutiny of this demurrer. U. S. v. Denee, 3 Woods, 39, 25 Fed. Cas. 817, No. 14,947; U. S. v. Wilcox, 4 Blatchf. 391, 28 Fed. Cas. 599, No. 16,692; U. S. v. Wilcox, 4 Blatchf. 393, 28 Fed. Cas. 600, No. 16,693; U. S. v. Evans (D. C.) 19 Fed. 912; U. S. v. Thompson (C. C.) 31 Fed. 331; Babcock v. U. S. (C. C.) 34 Fed. 873; U. S. v. Bowman, 2 Wash. C. C. 328, 24 Fed. Cas. 1212, No. 14,631; U. S. v. Quinn, 8 Blatchf. 48, 66, 27 Fed. Cas. 673, 680, No. 16,110; U. S. v. Deming, 4 McLean, 3, 25 Fed. Cas. 816, No. 14,945; U. S. v. Stowell, 2 Curt. 153, 27 Fed. Cas. 1350, No. 16,409; U. S. v. Hearing (C. C.) 26

Fed. 744; U. S. v. Edwards (C. C.) 43 Fed. 67; U. S. v. Evans (D. C.) 19 Fed. 912; 2 Bish. Cr. Pr. (3d Ed.) 1019; Rex v. Hilton, Tremaine, P. C. 174.

With such an array of authorities cited by Mr. Bishop and the counsel in this case, and on the concession of the district attorney that all the elements and particulars of an indictment for perjury against the suborned witness must be contained within this indictment against this defendant for a subornation of that witness, it would seem logically to follow that the omission of the phrase under consideration, either in the section relating to subornation of perjury in our federal statute, or in the section of the original act of George relating to the same offense, or its omission entirely from both sections of the statute of Victoria, would have no effect, except in England, where the statute of Victoria has dispensed with it in relation to both offenses. Yet I am not prepared to say that a nice discrimination in logical results does not preclude this conclusion, and that it is not so certain as it seems to be. It was within the power of the Legislature to say what should be contained in an indictment for subornation of perjury, and it has not enacted that this averment shall be inserted in an indictment for that offense, while enacting that it should be inserted in an indictment for perjury; and I am not sure that we are authorized by judicial construction to incorporate a phrase into the statute about the subornation of perjury that the Legislature chose to leave out. The necessity for putting it into an indictment for subornation is based wholly upon judicial construction, as against the statute itself about subornation of perjury; and, if Mr. Bishop is right, and if the Court of Appeals in England is right, that this is a technical strictness which may well be dispensed with in an indictment for perjury, and is required only because the statute requires it in perjury, why should the courts demand it in an indictment for subornation of perjury upon any such reasoning as that which is contained in the case of U. S. v. Denee, and other cases supra? There may be a misfitting in the logical conclusion insisted on by the defendant's counsel because of this omission from the statute regulating the form of an indictment for subornation of perjury, but, as presented in this case, and because of other fatal objections that there are to the indictments, it is not deemed necessary to decide the point, but only to suggest and reserve it.

The conclusions reached on these specific grounds of the demurrer, namely, the first ground in the original demurrer and the second ground of the supplemental demurrer, may be summarized as follows:

(1) The indictments do not designate the court in which the perjury occurred by specific averment or equivalent words, and that ground of demurrer is well taken.

(2) The indictments do not, by direct averment or equivalent words, show that the suborned witnesses were ever sworn at all to speak the truth, the whole truth, and nothing but the truth, as required by law, and that ground of demurrer is well taken.

(3) But as to the absence of any averment that the court in which the witnesses were assumed by the pleader to have been sworn had

competent authority to administer the oath, no decision is made; and the question is reserved whether that requirement of Rev. St. § 5396, in regard to the offense of perjury, applies to Rev. St. § 5397, in respect of the offense of subornation of perjury, from which that requirement is omitted.

The next or second ground of the demurrer objects to these indictments because they omit the word "willful," which is used in defining the statutory offense of perjury, as announced by our Rev. St. § 5392. The pleader has omitted this word, when the statute lay open before him, and it was a plain duty, on the authorities, to have used it, and when the simple use of that word would have precluded any controversy about it—a controversy that has been flagrant in its conflicts concerning that word, and its equivalent, in relation to almost every offense, either at common law, or under the statutes, of which it is an element. As before, these indictments are profuse in charging that Howard knew that these suborned witnesses were to commit "willful" perjury, that word being used freely in that connection; but also, as before, it does not seem to have occurred to the pleader that he must allege in the indictments all the essential particulars of the offense of perjury as against the suborned witnesses themselves. Therefore the district attorney has been driven to rely, as before, upon implication of words used for another purpose than that of describing the offense in relation to the suborned witness in an indictment charging the subornation against the defendant. Also the district attorney has been driven by this ill construction of the indictments to rely upon the doctrine of equivalence for the use of the word "willful."

This requires us to consider the perplexities arising out of the conflict in indictments of all kinds where the word "willful" is involved. It will be found that that conflict requires discrimination between indictments at common law relating to offenses where willfulness was an element of the crime, and those offenses declared by statute where the question arises upon the statutory use of the word in describing the offense. The first consideration that seems to me to somewhat allay the confusion in the authorities and guide us to a proper conclusion is that an obligation imposed by the statute to use the word is of no higher degree than an obligation of the common law to use it; or, to put it another way, if it be an element of an offense at common law, which may be charged in equivalents, there would seem to be no substantial reason why equivalents may not be used in describing the same element which is ordained by a statute. But there can be no doubt, upon the authorities, that this consideration is somewhat modified by the reasonable rule that good pleading requires that a statutory offense should be charged in the very language of the statute, where that language is sufficient to define the offense, and give the defendant information of the nature and cause of the accusation against him, as required by the sixth amendment to the Constitution of the United States; and unless it be necessary, by the same rule of good pleading and the requirements of that provision of the Constitution, that the language of the statute shall be expanded or supplemented by such words as are necessary to convey to the

defendant the constitutional information to which he is entitled, of the nature and cause of the accusation against him, then, of course, the pleader is at liberty to choose such words as are necessary for that purpose, in combination with those that are used in the statute. This is just the very trouble that would have been avoided if the pleader in this case had used that word itself as it is used in the statute. Another reason for using the word itself as required by this statute defining perjury is, to use the language of Mr. Chitty, "in former times indictments for perjury were exceedingly prolix and dangerous." 2 Chit. Cr. L. 306. And this federal statute has very much altered the nature of the offense from that which existed at common law, and was in itself designed to remove these perplexities by exactitude of definition.

We are not without guidance, however, in the analogies of the common law, and those arising under the English statutes of perjury, which will assist us in the determination of this question. At common law in this particular perjury was defined to be a "willful, false oath, by one who, being lawfully required to depose the truth in any judicial proceeding, swears absolutely in a matter material to the point in question, whether he believed it or not." 2 Chit. Cr. L. 302. Thus it will be seen that the offense had to be "willful," but it was well settled at common law that the use of that identical word in an indictment was not necessary; it being implied from the words "falsely, maliciously, wickedly, and corruptly." 2 Chit. Cr. L. 309; Ar. Cr. Pl. 429; Id. 51, 52. This seems to be somewhat contrary to the ruling in U. S. v. Edwards (C. C.) 43 Fed. 67, so much relied up a by the learned counsel for the defendant. Hawkins lays it down, in discussing the word "willful," "It must appear by the proof to have been so;" and he defines it as being an oath taken with some degree of deliberation, and if it was the result of wickedness in the witness, or perversity, or was occasioned by surprise or inadvertency, it could not be taken at common law to be voluntary and corrupt perjury. 1 Hawk. P. C. 319, § 2. We might add to this, I should think, the suggestion of the defendant's counsel in this case that, if the testimony was induced by duress, it could not be said to be willful. Other authorities will be found gathered in 2 Bouvier's Dictionary (14th Ed.) 324, tit. "Perjury." I think it may be safely affirmed that at common law the use of equivalents for the word "willful" was well established, but the question assumes a different phase when we come to consider the authorities arising under the English statute of Elizabeth (5 Eliz. c. 9), in which the words were "willfully and corruptly commit any manner of willful perjury." It was held that the indictment on the statute must exactly pursue the language of the act, and therefore to allege that the defendant swore to the matter in question falsely and deceitfully, or falsely and corruptly, or falsely and willfully, without saying "willfully and corruptly," would be invalid; and in an indictment for subornation of perjury, under the same statute, where those words were used, it was held that an indictment omitting the words "voluntarily and corruptly"—the French law phrase used in indictments as the equivalent of the English words, "willfully and corruptly," showing that the sense of willful as used

in the statute was voluntary—was fatally defective. 2 Chit. Cr. L. 315; 2 Hawk. P. C. 354, § 110; 1 Hawk. P. C. 326, § 11. The latter authority also says that it is "not always sufficient to pursue the very words of the statute, unless by so doing you fully, directly, and expressly allege the fact, in the doing or not doing whereof the offense consists, without any the least uncertainty or ambiguity." But where the words of the statute are descriptive of the nature of the offense or the purview of the statute, an indictment must follow the very words. 2 Hawk. P. C. 354, § 111, and note. So much perplexity arose by construction of this statute of Elizabeth, that these authors tell us prosecutions under it were rare, the crown preferring to proceed under the common-law forms for the common-law offense. 2 Chit. Cr. L. 315.

Modern authorities as to the use of this word "willful" will be found noted as to indictments generally, 10 Ency. Pl. & Pr. 492; as to perjury, 16 Ency. Pl. & Pr. 336, 349; as to various other offenses where the word is important, 2 Ency. Pl. & Pr. 824, 853; 8 Ency. Pl. & Pr. 794; 11 Ency. Pl. & Pr. 205; 13 Ency. Pl. & Pr. 408. The decisions of the federal courts will presently receive particular attention.

These authorities all admonish us, I think, that it is not well to incorporate into the construction of our federal statutes the perplexities that arose under the statute of Elizabeth, and almost caused its abandonment—a confusion which is observable also by a mere glance at the authorities cited from the state courts in America. I am inclined, therefore, to hold that, notwithstanding the obvious advantage of using the identical word used in the statute, it is not absolutely necessary to use the word "willful," and the pleader may resort to its equivalents, provided always that the words and phrases selected are sufficient to secure to the defendant his constitutional guaranty of being informed of the nature and cause of the accusation against him. Both the language of the federal statute and any equivalent substitute for that language must conform to this provision of the Constitution, and fairly and fully serve its purpose. Now, then, while in these indictments the pleader has been careful enough to aver that Howard knew that the witness Smith, for example, had been suborned to "willfully" swear contrary to his oath to facts that he did not believe to be true, it is going a long way upon the pathway of indulgence to permit an implication from that averment that Smith himself "willfully" swore, contrary to his oath, to that to which he did not believe to be true. It is stretching the doctrine of equivalents to substitute an allegation of Howard's knowledge of Smith's willfulness for Smith's own state of mind in that behalf as to willfulness. It is in the end to substitute Howard's for Smith's state of mind upon the subject, which obviously will not do. In very strictness, it may be doubted whether Howard's state of mind in this behalf is at all important in an indictment for subornation of perjury. Rev. St. § 5393 [U. S. Comp. St. 1901, p. 3654], describing subornation, does not use the word "willful," and simply denounces the procurement or subornation as an offense; and, if Howard's knowledge that the suborned witness is to swear willfully is necessary to be al-

leged and proven, it is only upon an implication founded upon or inhering in the word "perjury," as used in Rev. St. § 5393. It is not to be doubted that the safest plan is to allege Howard's knowledge that the witness would willfully do the swearing necessary to constitute perjury, but, thus alleged, it does not follow that it furnishes the basis for an implication of willfulness under Rev. St. § 5396, in defining the offense that Smith committed. The argument of the district attorney is that the statement that Howard knew the testimony was given willfully is, in effect, to allege two facts: First, that the testimony was willful; and, second, that Howard knew it; and he says it was quite proper, in an indictment for subornation, to use this form of subornation, as the charge was more particularly against Howard, who was charged with the subornation. He cites the case of U. S. v. Thompson (C. C.) 31 Fed. 331, to support this position. That was an indictment for subornation of perjury under the timber culture act of June 14, 1878 (chapter 190, 20 Stat. 113); and the question raised was whether or not the defendant knew that the witness Shepherd, whom he had suborned to commit the perjury, knew that the matter sworn to was false. The question arises upon a motion in arrest. The court said that at the trial it was properly submitted to the jury to determine, as a question of fact, whether Shepherd knew that he was committing perjury. Shepherd testified that he did not think that he was swearing falsely, but the jury found that, upon the facts in evidence, he knew the untruthfulness of that to which he had sworn, and that he made the oath at the solicitation of the defendant, knowing that it was a transaction for the defendant's benefit, and not his own; and the proof also showed that the defendant, as a matter of fact, did well know that the witness was willfully and deliberately committing the perjury in his behalf; but, in arrest of judgment, it was contended that the indictment did not allege the fact of the defendant's knowledge of the willfulness of the witness. It was conceded, on the authorities cited, that it was a necessary allegation in subornation of perjury that the defendant should know or believe that the testimony that was given by the suborned witness was willfully false, as well as false in fact; but the court said that the principal cause upon which the others were founded was silent on the subject of what averments were necessary to be found in the indictment. The indictment under scrutiny in that case alleged that both the defendant Thompson and the suborned witness, Shepherd, knew that the oath of the latter would be and was false, in fact, but it did not allege in so many words that the defendant knew or believed that Shepherd willfully took the oath, knowing it to be false, and thereby committed the perjury. It was in that case, as is in this, the pleader had left out the averments found in these indictments that Howard knew that Smith, for example, was to willfully swear falsely. In other words, in the Thompson Case the question was an implication to supply that which is fully alleged in these indictments, as we have already found and stated, concerning Howard's knowledge—an altogether different implication from that which we are considering under this argument. It is true that the indictment in that case, as in this, did not allege that the suborned witness willfully committed per-

jury; but there was also in that indictment an absence of any allegation about the suborner's knowledge of the willfulness, while in this there is no such absence. The court conceded that the indictment might be defective on demurrer, but after verdict the defect was not sufficient to arrest the judgment, for, while the indictment did not state in detail the facts of the subornation, it did state that the defendant knew that the witness would swear falsely and commit the crime of perjury, from which it necessarily followed by implication that he knew that the oath on the part of the witness would be willful. It is plain to be seen that in that case it was an implication against the defendant, based upon his own knowledge of the facts, while in this case we are asked to base an implication of the defendant's own knowledge of the willfulness that the witness himself was willfully swearing, contrary to his oath, to that which he did not believe to be true. It may be a psychological fact that Howard could not know that Smith would willfully swear to a given thing without its being true that Smith was in very fact acting willfully, but we are not concerned about Howard's knowledge of the fact in this inquiry, but Smith's state of mind, and that is a fact that must be substantively averred, and, I think, cannot be made to depend upon the psychological conditions suggested in a pleading that requires so much certainty of averment as a criminal indictment. It depends upon the rigid, narrow signification of the word "know." It is not impossible to conceive that on a trial of these indictments for subornation of perjury the defendant could escape conviction, notwithstanding the averment that he knew that Smith would swear willfully to his false oath, and notwithstanding that averment expressed the truth of the case in a certain sense. For illustration, if, at the time the bargain was made by Howard with Smith for his false testimony, Smith had been, let us say, insane, so that he could not act willfully about anything, and Howard, being ignorant of the fact of insanity, should have made his bargain, in the belief that Smith was sane, and in the belief, therefore, that he was acting willfully both in his bargain, and would be acting willfully in delivering his testimony, it might be well said, in a less rigid and narrow sense, that Howard knew that he was acting willfully; and yet, if Howard could prove upon the trial of the subornation indictment that Smith was insane at the time the bargain was made, and was insane at the time the testimony was delivered, whereby it would be demonstrated that Smith was not acting "willfully," is it not quite sure that he would escape conviction? Hence the necessity for a substantive averment that Smith did deliver his false testimony willfully. Other illustrations possibly might be suggested, but this is sufficient to show, in my judgment, that the district attorney's premise that a statement that Howard knew the testimony was given willfully, in effect, alleges two facts: First, that the testimony was willful; and, second, that Howard knew it—is not sound, except upon the assumption of a fixity of meaning for the word "know" or "knew," which is not permissible. It may be inelastic enough for the district attorney's purpose in its etymological signification, but this inelasticity cannot be permitted for its use in an in-

dictment, for the reason that, like all other averments in a criminal indictment, it does not prove itself, but is liable to be modified or explained by proof at the trial upon a traverse by the plea of not guilty, as in the manner already suggested. Whatever may be thought of this reasoning as against the district attorney's position, we are left at last for safety of judgment on such a question to the guidance of the familiar rule that in criminal pleading intendments and equivalents are not permitted whenever there is any doubt about them, and everything which the pleader should have stated, and which is not expressly alleged, or by necessary implication included in what is alleged, must be presumed against him. 10 Ency. Pl. & Pr. 475, note 1, citing Foster v. State, 19 Ohio St. 417; Mears v. Commonwealth, 2 Grant, Cas. 385.

The district attorney also cites the case of Babcock v. U. S. (C. C.) 34 Fed. 873. In that case it does not at all appear whether or not the indictment used the word "willful" or not, but it does appear that the indictment stated that the suborned witness knew at the time that the affidavit she made was false. If that is all that is in the indictment, it would be an authority for saying that such an averment was equivalent to an allegation that the false oath was taken willfully; but we have in this indictment no such allegation, but only the allegation that Howard knew that it was false and willful, and I cannot see that fairly the case can be taken as any authority in support of the district attorney's position.

The defendant's counsel cites and relies on the case of U. S. v. Pettus (C. C.) 84 Fed. 791, arising in this court upon an indictment for perjury under the election laws in a contest pending before the House of Representatives in Congress, where it was ruled that, notwithstanding the liberalizing statutes passed to relieve the pleadings in perjury of their rigor and perplexity, it yet remains that there must be in an indictment for perjury all the substantial averments required for accuracy, certainty, and particularity in charging the offense. It was also held in that case that the word "willful," when used, was sufficient by itself, under our statutes. In the case of U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. 512, 27 L. Ed. 520, for offenses under the banking laws, where the word "willful" frequently occurs, its use in criminal pleading was much discussed, but, as far as I can see from a careful reading of the case, it does not bear upon the question we have here. As to certain counts in that indictment, it holds that the words of the statute, "willfully misapplied," acquired no technical meaning in that relation, like certain common-law words that are cited, and therefore that it was necessary to put into the indictment allegations that would show that the application of the funds was one made criminal under the statute, and in other counts of the indictment this willful misapplication was implied from a statement of facts which did show that it was an unlawful use of the bank's funds; but there is nothing in the case to show that the willfulness was implied and omitted from the indictment. It may be remarked in reference to this case that the word "willful," in the law of perjury, has fixed to it a technical signification that is as old as the common law itself, however barren it may be of such a signification under such statutes

as were under investigation in that case. The case is explained as above in the subsequent case of United States v. Northway, 120 U. S. 327, 7 Sup. Ct. 580, 30 L. Ed. 664, upon the same statutes, where it was ruled that the criminality of the misapplication must be set out in the indictment in order to distinguish those acts which were criminal, being criminal, from those which, being willful, were not criminal under the act. But there is no indication in that case that the word "willful" may be implied, without the use of equivalent expressions, in the absence of direct averment, nor any indication that it is to be supplied by inferences as unfounded as that which has been set out in this case. 120 U. S. 332, 334, 7 Sup. Ct. 580, 30 L. Ed. 664. The case of U. S. v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516, upon an indictment for a criminal misuse of the mails, held that no essential allegation of the crime described in the statute can be omitted from the indictment without destroying the whole pleading, and that the omission cannot be supplied by intendment or implication, but the charge must be made directly, and not inferentially or by way of recital. If this rigorous ruling is to be applied to this case, it may be doubtful whether any other word than the word "willful" could be used in these indictments, and it may be doubtful whether any other than a direct averment that the suborned witnesses willfully delivered their false testimony would be sufficient; but these general expressions of the court must be limited in their effect to the particular case in hand, and the reliance of the counsel for the defendant upon this case overlooks that necessary limitation upon the use of decided cases, or rather the expressions of opinions by the judges. In that case the indictments were defeated because they did not particularly describe an offense which it was held the statute itself did not sufficiently describe, and that it belonged to that category of cases where the pleader must expand the language of the statute by "descending into particulars."

In the case of Dunbar v. U. S., 156 U. S. 185, 15 Sup. Ct. 325, 39 L. Ed. 390, there was an indictment for smuggling. The language of the statute was that if any person shall "knowingly and willfully, with intent to defraud the revenues, smuggle or clandestinely introduce," etc., and the charge of the indictment was that he did "willfully, unlawfully, and knowingly, with the intent to defraud, smuggle," etc., and it was held that the word "knowingly" necessarily implied an averment that the defendant knew that the duties on the opium had not been paid; but that is altogether a different thing from implying, either from the use of the word "knowingly," or from an averment of the fact, that the duties had not been paid, an allegation that the smuggling was willful, and therefore that case has no bearing that I can see upon this.

U. S. v. Coffin, 156 U. S. 432, 448, 15 Sup. Ct. 394, 39 L. Ed. 481, was another case under the banking laws. The question was whether or not the indictment required a specific allegation that the aider and abettor knew that the principal offender, who had misapplied the funds of the bank, was an officer of the bank. The court pretermitted the question upon the ground that the use of the words "as aforesaid" in connection with an averment that was in the declaration, that

the defendant "unlawfully, willfully, feloniously, knowingly, with intent to defraud, did aid and abet," sufficiently connected the aider and abettor with the principal offender, and showed by necessary implication that he knew the fact that he was the officer of the bank. In other words, the implication was based upon a disregard of the niceties of grammar which were relied upon by the defendant, and a grammatical construction which was permitted upon the face of the allegation that was found in the indictment. But there is nothing in the case which indicates that we would be permitted here to make the implication that is demanded of us.

The case of Batchelor v. U. S., 156 U. S. 426, 15 Sup. Ct. 446, 39 L. Ed. 478, arose also under the banking laws. In that case the indictments were overturned because it was held, following the authority of U. S. v. Britton, and other cases, that the words "willfully misapplied," as used in the banking statutes, have acquired no technical meaning, and therefore it was required that the indictments should set forth the particulars of the transaction, so that it could be seen from them that there had been a misapplication of the funds.

Evans v. U. S., 153 U. S. 584, 14 Sup. Ct. 934, 38 L. Ed. 830, was another bank case, involving the sufficiency of the indictment for a willful misapplication of the funds. In that case the court reviews all the cases of the Supreme Court of the United States, and lays down a rule that "even in cases of misdemeanor the indictment must be free from all ambiguity, and leave no doubt in the mind of the accused and the court of the exact offenses intended to be charged against him," and, where the indictment does not do this, it is bad, as we have suggested in the foregoing part of this opinion. It is also clearly established by these authorities that intendments and inferences must be of a kind that relieves all ambiguity, or they are not permitted; neither can the intendments and inferences be founded upon ambiguous words and phrases that are equivocal in their character. It was held in the Evans Case, supra, that the omission of the word "willfully" from such an indictment would be clearly bad.

The case of Spurr v. U. S., 174 U. S. 728, 19 Sup. Ct. 812, 43 L. Ed. 1150, is another of the bank cases. In that case the chief justice calls attention to the fact that the word "willful" has a familiar significance in criminal statutes, and he cites some of the cases which have defined and construed it. The indictments contained the averment that the defendant had willfullly, unlawfully, and knowingly certified the checks, but the trial judge declined special instructions defining the word "willful," and for that error the conviction was reversed; but I cannot see that the case has any bearing upon the question we have here, in relation to the necessity of a direct averment of willfulness in the indictment. It is only useful in this connection by showing that it is dangerous to omit it in pleading an offense where the statute uses that word, and that it is, at least, perilous, if not fatal, to omit it.

In the case of U. S. v. Babcock, 4 McLean, 113, 24 Fed. Cas. 928, No. 14,488, there was an indictment for perjury. The indictment alleged that the defendant, "deceitfully and fraudulently, intending to defraud the United States, did, of his own wicked and corrupt mind,

falsely swear as aforesaid in support of his claim," etc., and there was a general demurrer to the indictment. Among other things, the court held that the indictment was defective in not averring that the oath was willfully, knowingly, and corruptly taken, knowing it to be false, or having in it words of the same import, and that the indictment must charge the offense with technical accuracy in such regard. The court called attention to the fact that, if the defendant ignorantly swore to the distance in the case which he had traveled, he would not be guilty. So here, as has already been suggested, if Smith, by duress, or through mental incapacity, could have been exonerated from a charge of willful false swearing, he would not have been guilty, and hence, if he could be so exonerated on the trial of this case, the defendant would not be guilty, notwithstanding he might have believed at the time that Smith was swearing willfully; and upon such belief the pleader here might have charged the defendant, Howard, with knowing that Smith swore willfully, when in fact he might not have done so. The illustration of the court in the case of U. S. v. Babcock, supra, is pertinent to show the necessity for the use of the word "willful," or an equivalent which of itself shall not be ambiguous. In that case the indictment was based upon the act of March 3, 1825 (chapter 65, § 13, 4 Stat. 118), which was somewhat different from our statute (Rev. St. § 5392 [U. S. Comp. St. 1901, p. 3653]). In that statute the words were "shall knowingly and willfully swear," etc.; the word "knowingly" being eliminated by Rev. St. § 5392.

This, I believe, completes an examination of the federal cases cited by counsel in their very full and comprehensive argument in regard to the omission of the word "willful" from these indictments, and in the contention between them as to its implication from the averments that are made in relation to Howard's knowledge of the perjury being willful. The conclusion I have reached upon this ground of demurrer is that while it may be, upon the authorities, held that the omission of the identical word "willful" is not always fatal to the indictment, it must contain equivalent words themselves free from ambiguity or equivocation, and such words are not found in these indictments.

The next ground of demurrer is very closely related to that which has already been disposed of, and proceeds upon the theory that an indictment for perjury must not only allege that the oath was false, but that it was contrary to the truth, and that, in order that the defendant and the court may see from the face of the indictment that it was contrary to the truth, the truth of the facts in respect of which the witness testified must be set out in the indictments; in other words, the indictments must aver the truth. The district attorney insists that this is introducing a new rule of pleading into the law of indictments for perjury, but it is not necessary to reconsider the question in this case, as it seems to me. In that case the indictment only charged that the defendant did not believe in the truth of a statement which he made when he said there was no fraud at the election, and no unfairness practiced by any of the election officers, and that there was not any fraud, trick, or any unfairness at that election, and

that he knew of none of his own knowledge, and that he knew, to his own knowledge, that the votes as cast were fairly and honestly counted. The indictment only alleged that that was false; that is to say, that he did know and he did believe that there was unfairness and trickery practiced at the election. It was held that he could not know what this denial of the truth of his oath meant, unless it were further alleged that specific acts of unfairness and trickery did take place under circumstances that brought that fact to his knowledge. Again, the indictment alleged that it was false that the votes as cast were fairly and honestly counted, and that he knew that it was false, but the indictment did not go further and point out the particulars in which the votes as cast were unfairly and dishonestly counted, so that he might know the facts of which this denial of the truth of his oath was predicated. It was of that species of swearing, indefinite in itself, not indicative of any truth—bearing facts to inform him of the complaint that was made against him concerning which the ruling was made, and it seems to me that it could not appear upon such an indictment that the oath was false in that sense that the Constitution requires when it says that the defendant must be informed of the nature and cause of the accusation against him. It may be that this provision of the Constitution has incorporated into the law of the pleading of perjury a greater particularity in this regard than was required at common law, though I do not think so, but the rule must be carefully confined to the peculiarity of the charge of falsity as found in the particular case and its circumstances. In this case we are now considering, the assignment of perjury is of altogether a different nature. It is alleged in these indictments that these four witnesses each, according to the particular indictment based upon his testimony, testified that they knew one Ross, or one Leger, or one William Lord Moore, in New York or London, and that they worked for these persons, respectively, and that Howard, the defendant, was neither Ross nor Leger nor Moore. Briefly put, it was an oath as to the identity of the defendant in relation to these particular persons, or persons bearing these particular names, and that they did not work, as stated, for these particular persons at the times and places testified to. The perjury assigned is that these witnesses respectively did not know any such persons as Ross or Leger or Moore, and that they did not believe that Howard was not the same person as Ross or Leger or Moore, respectively. The negation of such affirmations as these in itself shows the truth. The distinction between the case of U. S. v. Pettus, supra, and this case, in that regard, is that in this case the particular facts stated in the oath that the witnesses took, the truth of which is denied by the assignment of perjury in the indictments, in themselves indicate sufficient to put the defendant on notice of the nature of the accusation against him, and the cause of it, namely, that while in truth and fact he was using the name of Ross and Leger and Moore, as proved by the government, in carrying on his nefarious correspondence, these witnesses testified by his procurement falsely that they knew persons by those names at the time and place indicated by the government's proof, and that the defendant had no identity with them. There could scarcely be conceived a more

specific and particular description of the alleged perjury, nor a more specific averment of what the truth was, than this. So it is that this case does not fall within the category of that of U. S. v. Pettus, supra. It is conceded by the defendant's counsel that this objection does not apply to the indictment predicated on Brockway's testimony, and when we turn to that indictment we find that the truth is made to appear by a more specific affirmation that Brockway did not see any man named Edgar E. Ross in New York or Brooklyn, or elsewhere, two or three times, as he had stated in his testimony, and that he did not know a man named Ross, and never knew a man named Ross who did not resemble the defendant, and, in truth and in fact, Howard was identical with the person named Ross. This affirmation of the truth is not so full in the other indictments, only in the sense that it, in the Brockway indictment, takes the affirmative form of statement, whereas in the other indictments it takes the negative form of statement.

The fourth ground of demurrer and the fifth, it is agreed, are substantially one and the same, and they will be treated as raising the objection that these indictments do not aver that the testimony of which the false oath and perjury is predicated was material. It is agreed by both counsel that, in all the indictments except that predicated on the testimony of the witness Smith, the indictments are good in respect of this, as each alleges in so many words that the testimony was material. That is all that is necessary, and, while sometimes it is good pleading to show the materiality in its particulars, it is conceded by counsel that the bare allegation that it is material is sufficient. That averment, however, is wanting in the indictment concerning Smith's testimony. The rule of the common law is stated by Mr. Chitty to be that a simple averment of a materiality will suffice, though it is proper to state any circumstance to which the assignment of perjury must refer, while, on the other hand, it seems that, when the materiality of the question evidently appears upon the indictment, the express allegation may with safety be omitted. 2 Chit. Cr. L. 309. In Hawkins, Pleas of the Crown, it seems to be concluded that at common law the materiality of an oath alleged to be false, taken in a legal proceeding, is prima facie taken to be material on the face of the indictment, but under the statute of Elizabeth the materiality had to be shown in the indictment or proved. 1 Hawk. P. C. 323, § 8; Id. 331, § 23. As it is the common-law practice that governs us, it is not necessary to go any more at large into the other authorities. In Markham v. U. S., 160 U. S. 319, 325, 16 Sup. Ct. 288, 40 L. Ed. 441, it is distinctly held that it is not necessary, in an indictment, to set forth the details or facts showing materiality, but only to simply aver that fact, as the indictment did in that case. But the case seems to have raised the question whether or not, on the particular facts of that case, the substance of the perjury was sufficiently alleged, and to have been held that the averment that the false oath was taken in a deposition given in the prosecution of an inquiry then pending before the Commissioner of Pensions about a pension claim was sufficient to indicate the materiality of the testimony about which the perjury was charged; and, as we have seen, the English

cases went further, and held that at common law materiality was prima facie averred by a statement that the alleged perjury took place in a pending suit. If this be so, it sufficiently appears in the Smith indictment that his perjury took place in a judicial proceeding against the defendant upon indictments for a criminal use of the mails, and so prima facie the testimony would be material, which, according to the assignment of perjury contained in the indictment, related to the identity of the defendant in respect of his plea of not guilty upon those indictments. I should hesitate, however, in strict law, to hold, in the face of all the authorities that say the materiality must be averred in the indictment, that it could be implied prima facie from the mere statement of the pendency of a judicial proceeding, and I am not quite willing to put the ruling here upon that ground. The only other basis suggested for an inference or intendment for an allegation of materiality is that of the alias charged against the defendant in the indictment, wherein it is averred that the indictment for misuse of the mails was returned against Joseph Leger, alias G. F. B. Howard. The argument is that upon that averment of the indictment it is manifest that any testimony concerning that alias would be material, which seems plausible enough until we consider that the office of an alias dictus is confined to the purpose of alleging that the defendant has borne two or more names. In other words, its function is solely to identify the person of the defendant. It has no relation to the subject-matter of the indictment, other than this. 2 Enc. L. (2d Ed.) 52. It is defined to be a description of the defendant by adding to his real name that by which he is known in some writing on which he is charged, or by which he is known. 1 Bouv. Dict. (14th Ed.) p. 111. It so happens in this case that we know, or would know from that which took place on the trial of Howard on the indictment for a criminal misuse of the mails, if these cases came to trial and that proof were introduced, that, while he is accused in this indictment under an alias, this perjury of Smith had no relation to his alias; that is to say, it was not introduced for the purpose of showing that Joseph Leger was a name by which he was known or "otherwise called," but two of the facts shown by the government —that, in the prosecution of his scheme to defraud his victims, he signed the name of Joseph Leger to letters deposited in the mails, and the purpose was to identify him as the person who wrote those letters in that name, and deposited them in the mail. It might have been that he could have used any other fictitious name as well, or many names other than that of Leger, and the proof would have been just as pertinent and effective, and the proof was not introduced for the purpose of establishing his use of an alias, but for the purpose of showing that he used fictitious names in his correspondence; and the materiality of the testimony of Smith and the other suborned witnesses arose out of the attempt on the part of Howard to refute that testimony by showing that there was a real Leger, and a real Ross, and a real Moore, known to those witnesses. If this indictment had been properly drawn, it would have stated the particulars of this proof as we now state it, in order to show the fact of materiality, unless the pleader chose to state simply that the matter was material to

the issue, and leave the particulars to be proved at the trial of these indictments, which, no doubt, would be the better method of framing the pleading. But in the absence of such averment, it is a gratuitous assumption on the part of the pleader that the testimony alleged in the assignment of perjury found in this indictment related to the aliases of Howard, and so it is a gratuitous assumption in this argument that the proof to be given at the trial would relate to Howard's alias. Certainly it would have some relation to it, because it happens that the alias pleaded and the name he used in writing the letters was the same; but, after all, in very strictness, proof was never introduced, and would not now be introduced at a trial of this indictment, for the purpose of establishing the averment that he used the name of Leger as an alias, but only that he used it as a fictitious signature to certain letters deposited in the mails. It does not appear, therefore, by any fair intendment upon the face of this indictment, that the testimony of which the perjury of the witness Smith was assigned is material.

This disposes of all the grounds of this complicated demurrer, and it only remains to be said that it is not surprising that the government of the United States—particularly the Post-Office Department —desires to prosecute this defendant for the subornation of perjury attempted to be charged in these indictments; and it is to be regretted that one guilty of so flagrant an offense, immeasurable in its audacity, should escape the prosecution desired by the government, because the framer of these indictments did not know how to draft them, and did not take the trouble to follow the precedents that are to be found in every book printed upon the subject of criminal practice and procedure since the foundation of the government, and long before in the mother country. The public policy involved in these prosecutions arises out of the desire on the part of the Post-Office Department to break up the common practice of using the mails for the purpose of victimizing those who are overcome by the allurements of their supposititious genealogies, and more, perhaps, by their inconsiderate or ignorant cupidity. No amount of warning given by the government, its ambassadors in England, the English officials of the Court of Chancery, or the officers of the Bank of England, suffices to dispel the delusion that our citizens bearing the names of their English ancestors have interest in funds accumulated in the Chancery Courts and in the Bank of England through long years of the unknown ownership of heirs and descendants in America. An amusing and pitiful illustration of the prevalence of this delusion was found in the testimony of a witness coming from the state of Arkansas, who testified in the trials of this defendant for a criminal misuse of the mails that he had been induced to believe that he was a part owner of the ground on which the Bank of England stands, in Threadneedle street, and he put some money into the scheme of recovering that interest through the defendant. It was argued by one of the lawyers of the defendant, on a motion for a new trial, that, if one believed himself to be such an owner, there could be no moral or professional wrong if a lawyer should engage to recover the interest supposed to exist, whatever might be said of the wrong of seducing one into that

belief and cultivating the delusion. It may be thought by some that such ignorance deserves no sympathy or protection, but such is not the view of our Post-Office Department, which seeks to protect the victims of this delusion against those who play upon it to their profit, whenever they undertake, in the prosecution of the fraudulent scheme, to use the mails of the United States; and hence these prosecutions, and the regret that must be felt by the authorities at their failure through such abortion in pleading as we find in these indictments.

An order may be entered sustaining the first ground of demurrer and the second ground of the supplemental demurrer, to the extent indicated in this opinion; also sustaining the second ground of the demurrer; also sustaining the fourth and fifth grounds of the demurrer as to the indictment relating to the testimony of the witness Smith; but overruling it as to all the others. The third ground of the demurrer and the first ground of the supplemental demurrer are overruled.

Ordered accordingly.